Draper v. Falley and Another.

*33      465*
127      20
127    300

33      465
141    653

33      465
158      24

### DRAPER v. FALLEY and Another.

AMENDMENT OF LAWS.—*Constitutional Law.*—Section 21 of article 4 of the constitution of this State requires that in revising an act or amending a section, the act or section shall be set forth and published at full length as revised or amended, but does not require that the old act or section shall be set forth and published; though, if this be done, it will not render the revision or amendment invalid, but the old act or section will be regarded as surplusage.

SAME.—*Court of Common Pleas.*—*Fifteenth District.*—*Times of Holding Court.*—The act of March 9th, 1861 (Acts 1861, p. 56), amending the fifteenth section of the act of March 5th, 1859 (Acts 1859, p. 84), and fixing the times of holding the court of common pleas in the counties of Benton, White, Carroll and Tippecanoe, is not in conflict with section 21 of article 4 of the Constitution, and, by implication, repealed said fifteenth section. The substitution in said act of 1861, of the word "while" instead of the words "as long as," in attempting to recite said fifteenth section, does not affect the validity of the act.

SAME.—*Act of May 31st,* 1861.—The act of May 31st, 1861 (Spec. Sess. p. 38), attempting to amend said fifteenth section of said act of 1859, is invalid as an amendatory act, because it attempted to amend a section which had no existence. Nor is it valid as an original act.

APPEAL from Carroll Common Pleas.

BUSKIRK, J.—The appellees commenced an action in the Common Pleas Court of Carroll county against the appellant, on a promissory note. The process was made returnable on the fourth Monday of May, 1869.. The court met

VOL. XXXIII—30.

on that day. On the second day of the term, appellant appeared and filed an answer in one paragraph, which was in these words:

"Comes now the defendant, and says that the court ought not to hear and determine this cause at this time, because he says this is not the time provided by law for the holding of this court, but says that the same should be begun and held on the second Monday in June, and not on the fourth Monday in May."

To this answer the appellees demurred. The demurrer was sustained, and an exception taken. The cause was, by the agreement of the parties, submitted to the court for trial. There was a finding for the appellees, motion for a new trial made, overruled, and excepted to. The only cause assigned for a new trial was the alleged error of the court in sustaining the demurrer to the answer. This ruling of the court is the only error assigned in this court. The only point submitted for our decision is, whether the Court of Common Pleas of Carroll county should commence on the fourth Monday of May, or on the second Monday of June, in each year. There is no controversy as to the proper times of holding the January and September terms of said court. The decision of the point presented by the record in this case involves an examination of the several acts of the legislature fixing the times for the holding of the common pleas court in Carroll county, and the conflicting decisions of this court as to the constitutional modes of making amendments to existing laws. The times for holding the common pleas courts were first fixed by an act approved March 4th, 1853. The court in the county of Carroll was, by that act, held on the first Mondays of January, April, July, and October. See Acts of 1853, p. 41.

In 1859, the act of March 4th, 1853, was repealed, and a new act was passed. By this act the common pleas district that had been numbered eleven in the act of March 4th, 1853, was numbered fifteen, and the times for holding the court in Carroll county were fixed on the fourth

Mondays of January, May, and September, in each year. Acts of 1859, p. 84. By this act the times for holding the court in Benton county were fixed on the first Mondays in January, May, and September. At the regular session of 1861, section fifteen of the act of March 5th, 1859, was amended, so far as it affected the times of holding the court in Benton county, but no change was made as to Carroll county. Acts of 1861, p. 56. In this act the legislature attempted to "set forth and publish at full length" the fifteenth section of the act of 1859, but it is not accurately copied. The words "as long as," in the last line, are omitted, and the word "while" is substituted. In every other respect the section is accurately copied, and is "set forth and published at full length." The section, as amended, is then "set forth and published at full length." An attempt was made to amend the act of March 5th, 1859, at the special session of 1861. The title of this act is as follows: ،

"An act to change the time of holding the Common Pleas Court, in the counties of Carroll and Tippecanoe, and to make all process returnable thereto."

The first section of said act is in these words:

"Sec. 1. Be it enacted by the General Assembly of the State of Indiana, that section fifteen of an act entitled 'an act to fix the times of holding the common pleas courts in the several counties of this State, the duration of the terms thereof, and making all process from the present common pleas courts returnable to such terms, and declaring when this act shall take effect, and repealing all laws inconsistent therewith,' approved March 5th, 1859, which reads as follows," &c. The fifteenth section of the act of March 5th, 1859, is then "set forth and published at full length," except that the word "and," preceding the words "in the county of Tippecanoe," is omitted.

The section as amended is then "set forth and published at full length," and is in these words:

"Sec. 15. In the county of Benton on the first Mondays of January, May and September; in the county of

White on the second Mondays of January, May, and September; in the county of Carroll on the fourth Mondays of January, the second Mondays of June, and the fourth Mondays of September; and in the county of Tippecanoe on the third Mondays of March, the first Mondays of July, and the third Mondays of December; said courts shall, if the business require it, sit in Benton one week, White two, Carroll three, at each term, and in Tippecanoe while the business shall require it."

There was no repealing clause to this act, or to the act of March 9th, 1861; but if the act of May 31st, 1861, is otherwise constitutional and valid, it repealed by implication the acts of March 9th, 1861, and of March 5th, 1859.  .

It is claimed by the appellant that the act of March 9th, 1861, is unconstitutional and void, for the reason that section fifteen of the act of March 5th, 1859, is not correctly and accurately copied and "set forth and published at full length," as required by the constitution of our State.

It is insisted by the appellees that the act of May 31st, 1861, is unconstitutional and void, for the reasons that the title to the act is defective, and that it attempts to amend a section that had been previously amended, and therefore was not in existence and could not be amended. In other words, it is insisted that the act of May 31st, 1861, should have set out the section as amended by the act of March 9th, 1861, and not the section as it was originally in the act of March 5th, 1859.

The decision of the questions presented will depend upon the interpretation and construction that should be placed on section 21 of article 4 of the constitution of the State of Indiana. This section provides, that "no act shall ever be revised or amended by mere reference to its title; but the act revised, or section amended, shall be set forth and published at full length."

This court, in the case of *Langdon* v. *Applegate*, 5 Ind. 327, placed a construction upon that section of the constitution. HOVEY, J., in delivering the opinion of the court, says: "A

section so plain and clear would scarcely seem to need construction. The convention, aware of the loose and imperfect manner in which bills were hurried through the general assembly, thought proper to throw several guards around the legislation of the State. Bills had been passed without being read; laws repealed by reference to the word, line, section, or chapter; until the confusion that followed left the statutes so imperfect and ambiguous, that the most able jurists in the State were unable to ascertain their meaning.

"To remedy these evils, the 21st section, with others, was adopted; and we think its clear and apparent meaning is, that the act revised or section amended must be inserted at full length in the act amending or revising it, thus placing upon the same page the old law and the amendment.

"It has been contended, that the correct reading of this section is, 'no act shall ever be revised or amended by mere reference to its title; but the act *as* revised, or section *as* amended, shall be set forth and published at full length.' Upon this construction, the general assembly acted in the passage of the laws of 1853; but it is easy to be perceived that such a construction is at variance with the grammatical meaning of the section. 'No act shall ever be revised or amended by mere reference to its title.' It is scarcely necessary to say that the word 'act' alludes to a law previously enacted; 'but the act revised or section amended,' (What act, what section? The same act first referred to and intended to be revised or amended) 'shall be set forth and published at full length.'"

This decision was made at the November term, 1854, and was approved and followed by this court in many subsequent decisions. It was recognized as the true construction of such section by this court, until the November term, 1867, when our immediate predecessors in office, in the case of *The Greencastle, &c., Turnpike Co.* v. *The State, ex rel. Malot*, 28 Ind. 382, overruled it.

Gregory, J., in speaking for the court, says: "The read-

ing and the object of section 21, article 4, are plain.   That
section requires that every enactment of the legislature
shall be complete within itself, that the present state of the
law on any given subject may be learned by reading the
last enactment, without the necessity of resorting to the
old.   This can be done without setting forth at length the
old law, in every case where the new embraces all of the
old left in force.   The old law, and the mischiefs existing
under it, ought not to be forgotten, in giving interpretation
to such clauses.   Let us mention them.   Under the consti-
tution of 1816, a section might have been amended by the
passage of an act running thus: Be it enacted, &c., that
section 26 of an act entitled 'an act regulating descents and
the apportionment of estates,' approved May 14th, 1853, be
and is hereby amended by inserting after the word 'within'
the words 'neither brothers and sisters, nor their descend-
ants.'   The mischiefs of this practice were numerous, and
in some respects grievous.   It required much labor and
pains on the part of legislators to enable them to understand
such bills.   Sometimes in the haste of the last hours of a
session, this care being scarcely practicable, bills in this form
were passed which never could have received legislative
sanction if they had been understood; and in the adminis-
tration of the law constant reference and comparison of
statutes were necessary to render such acts intelligible.   It
was merely to prevent the mischiefs of this mode of legis-
lation that the clause in question was inserted in the consti-
tution of 1851, and this is completely accomplished by requir-
ing the amendatory act to set forth at full length the sec-
tion as amended.   To set it forth only as it was before
amendment, would but partially remedy the evil; for then
the law, as it would stand after amendment, need not be
given, but might be left to be ascertained by examination
and comparison.   *   *   *   A little consideration will ren-
der it obvious that this would be a very inadequate remedy
for the mischiefs intended to be prohibited.   Inasmuch as
the language of the constitution can, without violence, and,

indeed, as we think, its plain meaning imports, be so interpreted that the mischiefs intended to be prevented may be wholly prevented, every principle of sound construction requires that it shall be.   *   *   *

"In the question under consideration there is involved a rule of legislation as lasting as the constitution, and if we adhere to the previous rulings of this court, one of great practical inconvenience.    Indeed, it would, under the rule heretofore adopted, be almost impossible to revise the code, or any other act of great length.    It has frequently, as in the case of the act for the incorporation of cities, driven the legislature, at great risk of the rights of parties, to repeal whole statutes and re-enact others, varying only in some few particulars from the old one."

Both the old and late judges of this court have agreed as to the purposes to be accomplished and the mischiefs to be remedied by the section in question, but they have differed radically as to the mode to be adopted to accomplish the purpose so much desired.    Both sets of judges have been distinguished for their learning and ability, and they have each given very strong, cogent, and plausible reasons for their interpretation and construction of the section in question.    STEWART, J., dissented from the opinion of the court in the case of *Langdon* v. *Applegate, supra.*    The most distinguished and learned lawyers who were members of the convention that made the present constitution, while they agree as to the purpose of the section, disagree as to the manner in which the purposes and aims of the convention can be best accomplished.    This court, in *Langdon* v. *Applegate, supra,* held that the only way in which this could be accomplished was to "set forth and publish at full length" the old act or section sought to be amended, and then to "set forth and publish at full length" the act or section after it had been amended.    The effect of this ruling was to hold all acts unconstitutional and void unless the amendment was made in that manner.    This court in the case of *The Greencastle, &c., Turnpike Co.* v. *The State, ex rel. Malot, supra,* held

that it was not necessary to "set forth and publish at full
length" the act or section to be amended, but that the act
or section as revised or amended was to be "set forth and
published at full length." The court, in this case, did not
decide that the mode prescribed in the former decision
would vitiate the enactment. Under the former decision,
an act or section can only be amended in one mode, while
under the late decision, either mode would be valid.

It is impossible to reconcile these decisions. We must
adopt the one or the other of these constructions; for the
section in question is not susceptible of a third and differ-
ent construction. We are greatly embarrassed by these
conflicting and irreconcilable decisions. If it was an open
and undetermined question, we would feel less hesitation in
giving an interpretation and construction of this section.
If the late decision had not been made, we would not prob-
ably feel inclined to disturb the former ruling. The con-
sequences to result from overruling the late decision are
sufficiently grave and momentous to induce us to act with
great caution and deliberation. Before the late decision
was made public, the legislature passed an act repealing all
statutes not in conformity with the ruling in the case of
*Langdon* v. *Applegate, supra,* and limiting the time in which
actions should be brought arising out of the same, or for
the violation thereof. The legislation of the State since
the rendition of the late decision has been made in confor-
mity therewith. The reversal of that decision would ren-
der all such legislation unconstitutional and void, and would
compel us to reverse many decisions made by this court
since the November term, 1867. This would produce great
confusion, uncertainty, and embarrassment in every depart-
ment of the public service. It would unsettle titles, re-
open controversies now closed, increase litigation, and ren-
der uncertain what laws are in force. The mode prescribed
by the late decision for the enactment of amendments to
existing laws is more convenient, less liable to mistakes,
and will save both time and money.

The plea of convenience, necessity, hardship, or conse-quences of any kind, should have no weight in placing an interpretation or construction upon a section of the consti-tution or act of the legislature, where great principles are involved, or where the language is plain and unambiguous; but where the rights and liberties of the citizens of the State are not involved, and where the instrument is susceptible of two constructions, then it is proper to weigh and consider the consequences, and to give that construction which will secure the aims intended, and which will result in the least injury or embarrassment to the public service. In this view we are sustained by very high authority. The Supreme Court of the United States, in the case of *United States* v. *Coombs*, 12 Pet. 72, says:

"And again, if the section admits of two interpretations, one of which brings it within, and the other presses it be-yond the constitutional authority of Congress, it will be-come our duty to adopt the former construction; because a presumption never ought to be indulged, that Congress meant to exercise or usurp any unconstitutional authority, unless that conclusion is forced upon the court by language altogether unambiguous."

The same court, in the case of *Prigg* v. *Commonwealth of Penn.*, 16 Pet. 539, says:

"The safest rule of constitutional interpretation is, to look to the nature and object of the particular power, du-ties, and rights in question, with all the light and aid of co-temporary history, and to give to the words of each pro-vision just such operation and force, consistent with their legitimate meaning, as will fairly secure and attain the end proposed."

In placing an interpretation and construction upon the section in question, we are required by the above decision to look to all the provisions in our constitution that were intended as guards and checks upon the loose system of legislation that existed prior to its adoption.

Sections 18 and 19 of article 4 of the constitution are in these words:

"Sec. 18. Every bill shall be read, by sections, on three several days, in each house; unless, in case of emergency, two-thirds of the house, where such bill may be depending, shall, by a vote of yeas and nays, deem it expedient to dispense with this rule; but the reading of a bill by sections, on its final passage, shall, in no case, be dispensed with; and the vote on the passage of every bill or joint resolution shall be taken by yeas and nays."

"Sec. 19. Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

Sec. 22 of the same article prohibits the passage of local and special laws upon a large number of subjects therein enumerated. Section 23 reads as follows:

"Sec. 23. In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

Section 22 of article 4 of the constitution of Oregon is the same as section 21 of article 4 of our constitution, and was copied from ours. The Supreme Court of that state, in *City of Portland* v. *Stock*, 2 Oregon, 69, held, that "the act revised or amended need not be set out in the revising or amendatory act," but that "the act revised or section amended must be set forth and published in full as revised or amended, incorporating all changes made." This decision is directly in point, and strongly sustains the recent decision of this court.

These provisions of our constitution remedy many of the evils complained of. After mature and thoughtful consideration, we have come to the conclusion that if the interpretation and construction placed upon the section in

question by our immediate predecessors in office, and the uniform interpretation and construction that has been placed upon the other sections of our constitution above quoted and referred to, are rigidly adhered to and carried out in good faith by the legislative department of the government, the aims and purposes intended by the framers of our constitution can be attained and secured, and our laws made plain, certain, intelligible, uniform, and stable. We therefore approve of the ruling of this court in the case of *The Greencastle, &c., Turnpike Co.* v. *The State, ex rel. Malot,* 28 Ind. 382.

It only remains for us to apply these principles to the acts of the 9th of March and the 31st of May, 1861, fixing the times of holding the court of common pleas in Carroll county. The act of March 9th, 1861, is constitutional and valid under the ruling in the case of *Langdon* v. *Applegate, supra,* as it, in substance, sets forth at full length the fifteenth section of the act of March 5th, 1859, and then sets forth and publishes at full length the section as amended. In our judgment, the omission of the words "as long as," and the substitution of the word "while," is so trifling and immaterial a change as not to affect its validity. This act is equally constitutional and valid under the late decision of this court. It complies with the constitutional provision by setting forth and publishing at full length the section as amended. The setting forth at full length the section sought to be amended will be, under the late decision of this court, regarded as surplusage, and will not effect its validity.

The act of May 31st, 1861, is unconstitutional and invalid under both decisions. It attempted to amend a section that had no existence. It is not, therefore, valid as an amendatory act. Nor can it be sustained as an independent original act. The first section of the act of March 5th, 1859, is in these words:

"Be it enacted by the General Assembly of the State of Indiana, That the courts of common pleas shall hold

their terms, in the several counties of this State, as set out out in the following sections in this act."

Then the act contains as many sections as there were common pleas districts. The language above quoted applies to and governs each section. When any of the sections of this act are amended, the amendment has relation back to the original act, and becomes a part of the original, so far that the words of the first section, declaring when the courts shall be held, apply to and govern the amended statute. The act of May 31st, 1861, not being an amendatory statute, it did not in any manner, or to any extent, become a part of the act of 1859. In no part of the act of May 31st, 1861, is there a declaration that the courts shall be held at the times therein specified. It is, for that reason, void as an independent statute. In our opinion, the act of March 9th, 1861, is valid, and the act of May 31st, 1861, is invalid. The Common Pleas Court of Carroll county was properly held on the fourth Monday of May. This conclusion renders it unnecessary to express any opinion as to the sufficiency of the title of the act of May 31st, 1861.

Judgment affirmed, with costs.

*S. B. Sims,* for appellant.

*J. H. Gould* and *R. H. Milroy,* for appellees.

