Blakemore v. Dolan et al.

## BLAKEMORE v. DOLAN ET AL.

CONSTITUTIONAL LAW.—*Amendment of Statute.*—An amendatory act under the constitution must profess to amend some act or section of an existing statute, and an amendatory statute which attempts to amend a section which has already been amended is unconstitutional and void.

STATUTE.—*Effect of Amendment.*—When a section in an existing law is amended, it ceases to exist, and is effectually repealed and obliterated from the statute, and the section as amended supersedes such original section, and becomes incorporated in and constitutes a part of the original act.

SAME.—*School Trustees.*—*Cities and Towns.*—The amendatory act of March 12th, 1875, in reference to the election of school trustees in incorporated cities and towns (Acts Reg. Ses. 1875, p. 135), superseded and took the place of the amendatory act of March 8th, 1873 (Acts 1873, p. 68), and to ascertain what the law is, the last act must be looked to solely and exclusively.

SAME.—By the amendatory act of March 12th, 1875 (Acts Reg. Ses. 1875, p. 135), the common council of each city and the board of trustees of each incorporated town, at their first regular meeting in June, 1875, were to elect three school trustees, who should hold their offices for one, two, and three years respectively, as might be determined by lot.

OFFICE.—*Right to Abolish.*—An office created by the legislature may be abolished, or the term thereof may be shortened.

From the Cass Circuit Court.

*Baker, Hord & Hendricks, D. C. Justice,* and *McConnell & Nelson,* for appellant.

*D. P. Baldwin* and *M. Winfield,* for appellees.

BUSKIRK, J.—William Dolan, treasurer of the board of school trustees of the city of Logansport, as a school corporation, filed a petition in the Cass Circuit Court for an order on George W. Blakemore, auditor of the county, to show cause why he should not issue his warrant on the county treasurer for certain school funds. The following is a copy of the petition:

"The plaintiffs complain of the defendant, and show to the court that William Dolan, Charles B. Knowlton, and Archibald McDonald, constitute and compose the board of school

trustees in and for the city of Logansport, in said county and state; that by the organization of said board, William Dolan is treasurer, Charles B. Knowlton is president, and Archibald McDonald is secretary; that there is now in the county treasury, collected by the county treasurer of said county, of the special school tax levied by said trustees, moneys to the amount of about eleven thousand dollars; that said board, in reliance upon said funds, have borrowed about nine thousand dollars, needed to complete the school buildings and fit them for use and occupancy; that it was borrowed from banks on short time; that more than five thousand dollars of the same is now due, and the banks are demanding payment; that the board have no funds on hand wherewith to meet said indebtedness; under the law, the board cannot draw the said moneys from the treasury aforesaid, except on the warrant of the auditor of Cass county; by law the said money, when collected, shall be paid to the treasurer of said board on the warrant of said auditor, whose duty it is to issue the same on demand; that the plaintiffs, the said city of Logansport as a school corporation, and the said William Dolan, as treasurer aforesaid, have each demanded of the said Blakemore, as auditor aforesaid, that he issue, as by law required, his warrant on the treasurer of said county for said moneys; that he has refused, and still refuses, to issue the same, without any just cause for such refusal; that these plaintiffs have no complete remedy against said defendant, except by a writ of mandate from this court to compel him to issue such warrant; therefore the plaintiffs pray that a writ of mandate be issued under the seal of this court to the defendant, to be made returnable at such time as the court may direct, to show cause for such refusal, and that on final hearing a peremptory writ issue against said defendant that he forthwith issue such warrant, with other proper relief in the premises; and this the plaintiffs will ever pray.

" WILLIAM DOLAN.

"Subscribed and sworn to before me this 3d day of June, A. D. 1875.                               M. WINFIELD,

"Notary Public. [Seal.]"

Blakemore *v.* Dolan *et al.*

Upon order to show cause why a peremptory writ should not issue, Blakemore made the following answer:

" Your respondent shows a further cause why he cannot safely issue to said Dolan a warrant on the county treasury for said fund, which is, that the common council of the city of Logansport at their first regular meeting in the present month, pursuant to an act passed by the last legislature, as he believes, elected three school trustees in and for the city of Logansport, to wit, Graham N. Fitch, W. H. Bringhurst, and Rodney Strain, which three trustees, within five days after their election as such trustees, after taking the oath of office according to law, met for the purpose of organizing themselves into a school board in and for said city of Logansport, and did so organize themselves as such school board, by electing the said Graham N. Fitch president of said board, and by electing the said Rodney Strain secretary of said board, and by electing the said W. H. Bringhurst treasurer of said board. And the said Bringhurst entered into bond as such treasurer in the penal sum of ninety thousand dollars, with sufficient security; and the said Rodney Strain, as such secretary, entered into bond in the penal sum of thirty thousand dollars, with sufficient security; all of which bonds were approved by me as auditor of Cass county, and were filed in the auditor's office of said county of Cass on the 3d day of the present month. Wherefore he, said respondent, thinks said three persons lawfully constitute the school board of the city of Logansport, and will very respectfully say to the court that he thinks he would violate one of the duties of his office to issue to said Dolan a warrant on said county treasurer for said school funds."

To this answer the plaintiff filed a demurrer, for want of sufficient facts, which was sustained, and exception taken. The defendant abided by the ruling of the court on demurrer, and appealed to this court.

The action of the court below in sustaining the demurrer to the answer is assigned for error, and presents for our decision the only question arising in the record. The proper solution

of such question depends upon the construction to be placed upon the fifth section of the common school law of 1865, as amended in 1873 and 1875.

On the 6th day of March, 1865, an act was approved, to provide for a general system of common schools. Acts Regular Session 1865, p. 3.

The fifth section of said act was as follows:

" Sec. 5. The common council of each incorporated city, and the board of trustees of each incorporated town of this State, shall, at their first regular meeting in the month of April of the present year, and biennially thereafter, elect three school trustees, who shall, before entering upon the duties of their office, take and subscribe an oath and give bond, similar to the oath and bond required of township trustees, and such trustees shall be allowed such reasonable compensation, per diem, for their services, as to the authorities of such incorporated cities and towns, may be deemed just to be paid out of the special tax raised in such cities or towns."

On the 8th of March, 1873, an act was approved amending the fifth section of the act of March 6th, 1865, which took effect at the date of the approval. Acts 1873, p. 68.

The amendatory section is as follows:

" Sec. 5. The common council of each city, and the board of trustees of each incorporated town of this State, shall, at their first regular meeting in the month of April, elect three school trustees, who shall hold their office, one, two, and three years, respectively, as said trustees shall determine by lot at the time of their organization, and annually thereafter, shall elect one school trustee who shall hold his office for three years. Said trustees shall constitute the school board of the city or town, and before entering upon the duties of their office, shall take an oath faithfully to discharge the duties of the same. They shall meet within five days after their election and organize by electing one of their number president, one secretary, and one treasurer. The treasurer, before entering upon the duties of his office, shall execute a bond to the acceptance of the county auditor, conditioned as in ordinary

official bonds, with at least two sufficient freehold sureties who shall not be members of said board, in a sum not less than double the amount of money which may come into his hands within any one year by virtue of his office. The president and secretary shall each give bond with like sureties to be approved by the county auditor, in any sum not less than one-third of the treasurer's bond. Said trustees shall receive for their services such compensation as the common council of the city or the board of trustees of the town may deem just; which compensation shall be paid from the special school revenue of the city or town. All vacancies that may occur in said board of school trustees, shall be filled by the common council of the city, or board of trustees of the town."

Afterward, on the 12th day of March, 1875, an act was approved amending the act of March 8th, 1873 (Acts Reg. Ses. 1875, p. 135). Said act is as follows:

"Section 1. Be it enacted by the General Assembly of the State of Indiana, that section 1 of the above entitled act be amended to read as follows:

"Section 1. That section 5 of the above recited act be amended to read as follows, to wit: Section 5. The common council of each city, and the board of trustees of each incorporated town of this State, shall, at their first regular meeting in the month of June, elect three school trustees who shall hold their office one, two and three years respectively, as said trustees shall determine by lot at the time of their organization, and annually thereafter shall elect one school trustee who shall hold his office for three years; said trustees shall constitute the school board of the city or town, and, before entering upon the duties of their office, shall take an oath faithfully to discharge the duties of the same. They shall meet within five days after their election and organize by electing one of their number president, one secretary, and one treasurer. The treasurer, before entering upon the duties of his office, shall execute a bond, to the acceptance of the county auditor, conditioned as in ordinary official bonds, with at least two sufficient freehold sureties, who shall not be members of said board,

in a sum not less than double the amount of money which may come into his hands, within one year, by virtue of his office. The president and secretary shall each give bond with like sureties, to be approved by the county auditor, in any sum not less than one-third of the treasurer's bond. All vacancies that may occur in said board of school trustees shall be filled by the common council of the city or board of trustees of the town, but such election to fill a vacancy shall only be for the unexpired term. The board of school trustees shall each year, within five days after the annual election of a member, reorganize their board and execute their respective bonds for the ensuing year. Said trustees shall receive for their services such compensation as the common council of the city or the board of trustees of the town may deem just, which compensation shall be paid from the special school revenue of the city or town.

" Sec. 2. Whereas, the provisions of this act are necessary for the guidance of boards of school trustees before the publication of the laws of this session, therefore an emergency exists for the immediate taking effect of this act, and it shall be in force from and after its passage."

The act of March 8th, 1873, required that the common council of each city should, at their first meeting in April, elect three trustees, and that the three trustees thus elected in April should hold their office one, two, and three years respectively from that time, as they should determine by lot at the time of their organization ; that annually thereafter the common council should, at their first regular meeting in April, elect one trustee, who should hold his office three years from his election in April.

The three trustees thus elected in April were required to meet within five days after their election and organize as a school board by electing one of their number president, one secretary, and one treasurer.

Under this law, three trustees were expressly required to be elected the April following the approval of the act, and their

term of office, whether one, two, or three years, as determined by lot, commenced running at that time.

If a vacancy occurred after the organization, it was to be filled by the common council, but the act did not prescribe the length of the term of the person thus appointed. It is not provided whether it shall be for the unexpired term of the person whose vacancy is filled or for the term of three years.

If, however, a correct construction of the act would have limited the time to the unexpired term, then, like the full terms, it would have expired in April.

The act of March 12th, 1875, provides for an election of three trustees at the first regular meeting of the common council in June, 1875.

These three trustees are, within five days after their election in June, to organize as a school board by electing one of the three thus elected in June president, one secretary, and one treasurer.

The three thus elected in June are to hold their offices one, two, and three years, respectively, from the time of their election in June, as shall be determined by lot.

It is also provided, that if a vacancy occurs it shall be filled by the common council, but it is therein provided that the appointee shall only hold for the unexpired term of the person whose vacancy he fills. This term would necessarily expire in June.

It is also provided by this act, that the board shall each year, within five days after the annual election of a member, reorganize the board and execute new bonds for the ensuing year.

The second section anticipates that the laws may not be published so as to take effect by the first meeting of the common council in June, and an emergency is declared for the immediate taking effect of the act for that reason.

At the first meeting of the common council in June, 1875, they had to determine whether, under the act of March 12th, 1875, they were to elect one trustee to hold his office for three years from that time, or three trustees to hold their office one,

two, and three years from that time respectively, as they should determine by lot. The term of the trustee holding under the act of March 8th, 1873, which expired in 1875, expired in April, 1875, according to the terms of the act, and not in June.

The act of March 12th, 1875, requires that three trustees shall be elected in June, and not that any other member shall be elected at that time.

The three thus elected in June are, as we have shown, to organize as a school board ; not one elected at that time, and two elected respectively in April, 1873, and 1874.

As the positive requirement of the statute is, that the three shall be elected in June, and that the board shall be composed of persons elected in June, it is only necessary to ascertain what June is referred to. Necessarily, it is the first June following the taking effect of the act, and that is June, 1875.

The case turns upon the effect which is to be given to the act of March 12th, 1875.

It is contended by counsel for appellant that the act of March 12th, 1875, repealed the act of March 8th, 1873.

On the other hand, counsel for appellees discuss at length the doctrine of repeal by implication. It is conceded that the two acts are inconsistent in some particulars, but it is insisted that the repeal by implication cannot extend beyond the repugnancy between the two acts. In other words, that so much of section 5, as amended in 1873, as has been incorporated and remains unchanged in the amendment of 1875, is to be regarded as having been the law from the time of the passage of the act of 1873, and the changed portion to have become the law from the passage of the act of 1875, and they rely upon the case of *Ely* v. *Holton*, 15 N. Y. 595, where it was held : " The effect of an amendment of a statute made, by enacting that the statute ' is amended, so as to read as follows,' and then incorporating the changes or additions with so much of the former statute as is retained, is not that the portions of the amended statute which are merely copied without change are to be considered as having been repealed and again re-enacted, nor that the new provisions or the changed portions should be

deemed to have been the law at any time prior to the passage of the amended act. The part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become law only at and subsequent to the passage of the amendment."

The decision in the above case was not made under a constitutional provision prescribing the manner in which amendments to existing laws are to be made. The court say : " The form in which amendments, both of the code and of the revised statutes, have generally been made, by declaring that particular sections shall be amended so as to read in a given way, was adopted for the purpose of adjusting them to the original enactments, so that when the system should, after repeated amendments, become complete, the different parts might be put together without further revision, and thus form a perfect code."

The constitution of Indiana prescribes the manner in which amendments to existing laws shall be made. Section 21 of article 4 provides, that " no act shall ever be revised or amended by mere reference to its title ; but the act revised, or section amended, shall be set forth and published at full length." 1 G. & H. 40.

It was held, in *Langdon* v. *Applegate,* 5 Ind. 327, that, in an amendatory statute, it was necessary to set forth at full length the old act or section, and then to set forth at full length the act or section as amended ; and this continued to be the rule until such case, with many others following it, was overruled by the case of *The Greencastle, etc., Co.* v. *The State, ex rel. Malot,* 28 Ind. 382.

The ruling in the above case was followed and adhered to in *Draper* v. *Falley,* 33 Ind. 465, and in some subsequent cases.

The rule, as laid down in *The Greencastle, etc., Co.* v. *The State, ex rel. Malot, supra,* is, that it is not necessary, in an amendatory statute, to set forth the old act or section, but that the constitution is complied with when the act or section amended is set forth at

full length as amended. Prior to the adoption of the present constitution, laws were amended by reference to the word, line, section, or chapter, until the confusion that followed left many of the statutes so imperfect and ambiguous, that the ablest lawyers and jurists in the State were unable to ascertain with certainty what statutes were in force, or to place any definite and satisfactory construction upon such as were supposed to be in force. To remedy these evils, the above quoted section was adopted, and, by the construction placed upon it, the amended section must be full and complete within itself, and when the section as amended is set forth and published at full length, it will contain all the law upon the subject embraced therein; for any matter contained in the old section which is not set forth at full length in the amended section ceases to exist.

If the section as amended does not contain all the law upon the subject, but reference has to be had to the old section to ascertain the law upon a given subject, the same confusion and uncertainty would exist in many of our statutes as existed prior to the adoption of the present constitution. Such a construction would virtually do away with the constitutional provision above quoted. It is our imperative duty to uphold and give complete effect to the constitution of the State, if it can be done in accordance with the settled rules of constitutional construction.

Under our constitution, enactments should be classified as independent and amendatory. An act is independent when it embraces matter not previously legislated upon; or it may be independent where there is a law upon the subject, when the act does not attempt to amend such law, but makes a new enactment. This method is frequently adopted, to avoid the necessity of amending in conformity with the requirements of the constitution. Usually the old law is repealed. If there is no express repeal, there may be a repeal by implication.

An amendatory act, under our constitution, must profess to amend some act or section of an existing statute.

It is provided by section 19 of article 4 of our constitution,

that " every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." 1 G. & H. 39.

No act can embrace more than one subject, which subject must be expressed in the title. So, an amendatory statute must state in its title what act or section or sections of an act it proposes to amend, and under section 21 of article 4, the section as amended must be set forth and published at full length. A strictly amendatory statute cannot be regarded as an independent statute, but an amendatory statute may be so framed as to amend certain parts of a statute and to add such supplementary sections as might be embraced under the title of the original act. *The State* v. *Bowers,* 14 Ind. 195; *Brandon* v. *The State,* 16 Ind. 197; *Shoemaker* v. *Smith,* 37 Ind. 122. It is settled by the adjudications of this court, that when a section in an existing law is amended in the mode prescribed by the constitution, it ceases to exist, and the section as amended supersedes such original section, and the section as amended becomes incorporated in and constitutes a part of the original act; and the original section is as effectually repealed and obliterated from the statute as if it had been repealed by express words; and it is upon this principle that it has been held that a section which has been once amended cannot again be the subject of amendment, but the section as amended must be amended. The distinction between the repeal and amendment of a statute is stated in *Alexander* v. *The State,* 9 Ind. 337.

In *Draper* v. *Falley,* 33 Ind. 465, it was held that an amendatory statute which attempted to amend a section which had been amended was unconstitutional and void, because the amended section had ceased to exist; and that an act which was professedly an amendatory statute could not be sustained as an independent or original act. In that case, the court say:

" Then the act contains as many sections as there were common pleas districts. The language above quoted applies to and governs each section. When any of the sections of this act are amended, the amendment has relation back to the original act, and becomes a part of the original, so far that the words of the first section, declaring when the courts shall be held, apply to and govern the amended statute."

In *The Board, etc.,* v. *Markle,* 46 Ind. 96, it was held that an amendatory act which attempted to amend a section which had been amended was void.

In *Longlois* v. *Longlois,* 48 Ind. 60, it was held that the amendments to the sections in question entirely superseded and took the place of the original sections, and by implication repealed them.

The adjudications in other states are in entire accord with those above stated. In *State* v. *Ingersoll,* 17 Wis. 651, the court say :

" The act complained of was committed in 1861, and it is very obvious that the defendant was tried and sentenced in 1863, upon the supposition that sec. 5, chap. 35, applied to the case and prescribed the manner of punishment. We are satisfied, however, that this is a mistake, and that that section had been repealed by chapter 147 above referred to. For that chapter provides that ' sec. 5, chap. 35 of the revised statutes, entitled " of excise," is hereby amended so as to read as follows,' etc. Now the conclusion is irresistible, that any provision of section 5, not found in this chapter, is repealed. This must be so, since the legislature says expressly that that section shall thereafter read and be to the effect following ; then going on to enact a complete substitute for the former provision. In what clearer manner could the legislature indicate its intention to supersede, change and repeal section 5, than by the one adopted ? It is amended so as to read and be to the effect therein prescribed, and quite different from what it was as it formerly existed. An examination of our statutes will show that this method of superseding and changing the existing law is frequently resorted to, and it certainly leaves no room to

doubt as to what the legislature intended. The legislature in effect says, that such provision of law shall be read and construed to be as therein declared, and shall have no other meaning or effect given to it. See case of *The State* v. *Andrews*, 20 Tex. 230. \* \* \* So far as the act complained of here is concerned, it was as though the legislature had directly repealed sec. 5, chap. 35, and stopped there. In that case it is apparent no prosecution could be maintained and no conviction had. The same result must now follow when the legislature repeals the section in the manner it did."

In *Goodno* v. *The City of Oshkosh*, 31 Wis. 127, the court say: " In *State* v. *Ingersoll*, 17 Wis. 651, this court decided that where a statute provided that a certain section of a former statute shall be 'amended so as to read as follows,' etc., any provision of such section not found in the new statute is repealed. It follows very clearly from that decision, that, whatever provision of the former statute was in force after the amendment of 1868, it was so in force because of being found in the amendatory act, and that if all or substantially all of the former section continued to be the law, it was merely by reason of its having been copied into and re-enacted with the amendment. The original section, as an independent and distinct statutory enactment, ceased to have any existence the very moment the amendatory act was passed and went into effect, and whatever provisions of it remained as law were such solely by virtue of being again enacted in the amendment. The original section, as a separate statute, was as effectually repealed and obliterated from the statute book, as if the repeal had been made by direct and express words, and none of its provisions had been re-enacted."

In *The State* v. *Andrews*, 20 Tex. 230, it was held, that where an amendatory act of the legislature reads that a certain section of a previous act shall thereafter read as follows, any provision of the previous act which is not found in the amendatory act is repealed.

It is quite obvious from these decisions, that the amendatory act of March 12th, 1875, superseded and took the place

of the amendatory act of March 8th, 1873, and that we are to look solely and exclusively to the last act to ascertain what the law is. By that act it is declared, in express and unambiguous language, that three trustees were to be appointed in June, and as the act took effect on the 12th day of March, 1875, and as it is provided, that " the common council of each city, and the board of trustees of each incorporated town of this State, shall, at their first regular meeting in the month of June, elect three trustees, who shall hold their offices for one, two, and three years, respectively, as shall be determined by lot," etc., it necessarily results that the June mentioned in said act was intended to be June, 1875.

Under the act of 1873, two of the old trustees would hold over, while under that of 1875, three are to be appointed, who are to hold one, two, and three years. If effect is to be given to both acts, there would be five trustees instead of three. There is no mode in which effect can be given to both acts.

But the question of a repeal of statutes by implication is discussed with much ability by counsel. We will assume that the doctrine in reference to repeals by implication applies to this case. We do not think that the condition of the appellees will be bettered, when tested by the rules applicable to repeals by implication.

In Coghill v. The State, 37 Ind. 111, it was said : " The repeal of laws is made in two ways; the one by a direct and express repeal; the other, by the passage of a new act which covers the entire subject-matter of the old one, and prescribes different punishment, and creates such an irreconcilable repugnancy between the acts that both cannot subsist together."

In Daviess v. Fairbairn, 3 How. 636, it was held, that in affirmative statutes, such parts of the prior as may be incorporated into the subsequent statute, as consistent with it, must be considered in force ; and that if a subsequent statute be not repugnant in all its provisions to a prior one, yet if the later statute clearly intended to prescribe the only rules which should govern, it repeals the former one.

In Longlois v. Longlois, 48 Ind. 60, the rule is stated thus:

" Where an amendment is made that changes the old law in its substantial provisions, it must, by a necessary implication, repeal the old law so far as they are in conflict. And where a new law, whether it be in the form of an amendment or otherwise, covers the whole subject-matter of the former, and is inconsistent with it, and evidently intended to supersede and take the place of it, it repeals the old law by implication." See *The Lorain P. R. Co.* v. *Cotton*, 12 Ohio St. 263; *The Dexter, etc., Co.* v. *Allen*, 16 Barb. 15.

Let us apply these principles to the case in judgment. The act of 1875 covers the entire subject-matter of the act of 1873. The two acts are repugnant, and cannot both subsist together. The act of 1873 provides for the appointment of three trustees in April, 1873, who are to serve one, two, and three years. The act of 1875 provides for the appointment of three trustees in June, 1875, who are to serve one, two, and three years. Under the act of 1873, the board was not required to reorganize each year, as it is under the act of 1875. There is an irreconcilable repugnancy between the two acts. It is very manifest that the last act was intended to prescribe the only rules which are to govern. Any other construction would create inexplicable confusion.

It is very mildly suggested in the brief of counsel for appellees, that the legislature possessed no power to legislate the old trustees out of office. There is not much force in the suggestion.

The office is not created or the term of service regulated by the constitution. The office was created by the legislature and may be abolished, or the terms of service of the trustees shortened. *Carson* v. *The State, etc.*, 27 Ind. 465; *Mullen* v. *The State*, 34 Ind. 540.

The court erred in sustaining the demurrer to the answer of appellant.

The judgment is reversed; and the cause is remanded, with directions to the court below to overrule the demurrer to the answer, and for further proceedings in accordance with this opinion.