Filed Dec. 9, 1884.

————◆————

No. 11,745.

FEIBLEMAN v. THE STATE, EX REL. BROWN, PROSECUTING ATTORNEY.

CONSTITUTIONAL LAW.—*Amendment of Statutes.*—The Constitution, section 21, art. 4, requires that an amendatory statute shall refer to the title of the act intended to be amended.

SAME.—*Justice of the Peace.—Residence.—Semble,* that a statute requiring a justice of the peace to reside in a particular part of his township is unconstitutional.

From the Superior Court of Marion County.

*F. Winter*, for appellant.

*W. T. Brown*, Prosecuting Attorney, *B. F. Davis, S. A. Forkner, W. D. Bynum* and *A. T. Beck*, for appellee.

HAMMOND, J.—This was an information by the State, on the relation of the prosecuting attorney, charging the appellant with usurping the office of justice of the peace in Center township, in Marion county, and asking for his ouster and exclusion therefrom.

The appellant answered to the effect that the board of commissioners of Marion county, on January 15th, 1884,

made an order fixing the number of justices of the peace in Center township at five; that on and before the April election in 1884, there were three vacancies in said office in that township; that the appellant, at said election, was elected to fill one of said vacancies; and that he was, pursuant to said election, duly commissioned and qualified, and was acting as such justice.

The appellee replied, first, by the general denial, which was afterwards withdrawn; secondly, that the order made by the county board fixing the number of justices of the peace for said township required that one of them should be for the town of West Indianapolis in said township; that appellant, at said election, was elected as a justice of the peace for said town, and was so commissioned and qualified; that at the time of his election he did not reside, nor had he since resided, in said town, but that he then and since had resided in the city of Indianapolis in said township, and that he was exercising his office, not in said town, but in said city.

The appellant's demurrer for want of facts was overruled to the second paragraph of the reply, and such further proceedings were had as resulted in a judgment commanding the appellant no longer to open, keep or maintain an office as justice of the peace in said city.

The sufficiency of the second paragraph of the reply depends upon the validity of the act of March 8, 1883 (Acts 1883, p. 190), which is set out in full further on in this opinion.

The first section of "An act providing for the election and qualification of justices of the peace, and defining their jurisdiction, powers, and duties in civil cases," approved June 9th, 1852, provided that the board of commissioners of the county should regulate the number of justices of the peace, not to exceed three for each township, and one in addition thereto for each incorporated town therein. 2 G. & H. 576. The section above named was amended February 26th, 1867, by fixing the maximum number of justices of the peace in each township at three, one in addition thereto for each incorpo-

rated town therein, and two in addition thereto for each incorporated city therein.    Acts 1867, p. 152, 2 R. S. 1876, p. 602.

The act of 1883, above mentioned, is as follows:

"An act to amend section 1 of An act entitled an act providing for the election and qualification of justices of the peace, and defining their jurisdiction, powers, and duties in civil cases, approved June 9th, 1852, being section 1418 of the Revised Statutes, and declaring an emergency.

"(Approved March 8th, 1883.)

"SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That section one of the above entitled act be amended to read as follows: Section 1. The number of justices of the peace in each township shall be regulated by the board of county commissioners of the county by proper orders of record; but the number shall not exceed two for each township, and one in addition thereto for each incorporated town therein, and one in addition thereto for each incorporated city therein; and authenticated copies of such orders shall be furnished by the auditor to the clerk of the circuit court: *Provided,* That when any justice of the peace is elected or appointed for any incorporated town or city, he shall reside and hold his court within the corporate limits of such town or city; and if any such justice of the peace shall reside outside of, or shall hereafter move out of, the corporate limits of such town or city, such office shall immediately become vacant.

"SEC. 2. An emergency existing for the immediate taking effect of this act, it shall be in force from and after its passage."

It is well settled by the decisions of this court that where a section of a statute is amended, it ceases to exist, and is superseded by the section as amended.    It is also well settled that an act of the Legislature which attempts to amend a section of the statute which has already been amended, is unconstitutional and void.    *Draper* v. *Falley,* 33 Ind. 465; *Blakemore* v. *Dolan,* 50 Ind. 194; *Ford* v. *Booker,* 53 Ind.

395; *Cowley* v. *Town of Rushville,* 60 Ind. 327; *Niblack* v. *Goodman,* 67 Ind. 174; *Clare* v. *State,* 68 Ind. 17; *Brocaw* v. *Board, etc.,* 73 Ind. 543; *Lawson* v. *DeBolt,* 78 Ind. 563; *McIntyre* v. *Marine,* 93 Ind. 193.

The controversy in the present case is whether the act of 1883, above set out, was intended to amend the first section of the act of 1852 or the amendatory act of 1867. If designed as an amendment of the former, its invalidity is conceded, for the reason that the first section of the act of 1852 had ceased to exist by the amendment of 1867. Our conclusion, after careful consideration, is that the object of the act of 1883 was to amend the first section of the act of 1852. The reasons for this are apparent both in the title and body of the act of 1883. The title of the act of 1883 sets out *verbatim* the title of the act of 1852, giving the date of its approval, specifies that it is an act to amend the first section of said act of 1852, and makes no reference by quotation, date, or otherwise, to the amendatory act of 1867. And then, after the enacting clause, the first section of the act of 1883 provides, "That section one of the above entitled act" (the act of 1852) "be amended to read as follows," etc.

But it is insisted that the words "being section 1418 of the Revised Statutes," following the words "approved June 9th, 1852," make it obvious that the legislative intent was to amend section 1 of the amendatory act of 1867, said section 1 of the latter act and section 1418 of the Revised Statutes of 1881 being the same. There is an evident mistake, but from the title and body of the act of 1883, it is manifest that it occurred in assuming that section 1418, *supra,* was the first section of the act of 1852. The draughtsman of the bill for the act of 1883 must have had before him the act of 1852, overlooking entirely the amendatory act of 1867, and the bill thus drawn passed the Legislature without the error being discovered. The cases cited from the decisions of this court show that similar errors in legislation are not of unfrequent occurrence.

But if it should be conceded that it was intended by the act of 1883, in its reference to section 1418 of the Revised Statutes, to amend the first section of the act of 1867, it is proper to inquire whether such mode of statutory amendment has the sanction of the Constitution. If the intention of the act of 1883 was not the amendment of the first section of the act of 1852, but the amendment of the first section of the act of 1867, then all references in the title of said act of 1883 to said act of 1852 should be regarded as surplusage, and, when eliminated, the title of said act of 1883, would read: "An act to amend section 1418 of the revised statutes, and declaring an emergency." Would this be sufficient? In other words, may a section of the Revised Statutes of 1881, or a section of any other statute, be amended by merely naming the section sought to be amended without referring to the title of the act of which it forms a part? Section 21 of article 4 of our State Constitution provides, that "No act shall ever be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length." Section 117, R. S. 1881. We do not think it was intended by the first clause of the above section to dispense with a reference to the title of an act in its amendment. If such had been its object, the first clause might well have been omitted. If nothing was to be required in the revision of an act or the amendment of a section, but to set it forth and publish it at full length, the entire purpose of section 21, *supra,* of the Constitution could have been more briefly expressed by reading, "An act revised or section amended shall be set forth and published at full length." Why then was the first clause inserted that "No act shall ever be revised or amended by mere reference to its title"? These words are presumed to have been used for some object. Judge Cooley in his work on Constitutional Limitations, pp. 57–8, says: "It is not to be supposed that any words have been employed without occasion, or without intent that they should have effect as part of the law. The rule

applicable here is, that *effect is to be given, if possible, to the whole instrument,* and to every section and clause." Giving a meaning to each clause of the section of the Constitution under consideration, it is plain, we think, that it was intended by this section that in the amendment or revision of a statute two things should be required : *First.* The title of the act to be amended should be referred to ; and, *Secondly.* The act as revised, or section as amended, should be set forth and published at full length. This construction gives meaning and force to each clause of section 21, *supra,* of the Constitution, and its observance enables the Legislature to act understandingly in the amendment of statutes. If a section in the revision of 1881 may be amended by simply referring to it by number, so may a law of any session of the Legislature be amended in the same way by a title like this : "An act to amend section 3 on page 46 of the Acts of 1883." This would lead to looseness and uncertainty in statutory amendments, which it was the main object of the constitutional provision under consideration to prevent. Section 19 of art. 4 of the Constitution provides that " Every act shall embrace but one subject and matters properly connected therewith ; which subject shall be expressed in the title." R. S. 1881, section 115. And this " title," we think, under section 21, *supra,* must be referred to when any subsequent amendment of the act is made.

Under the view thus taken the act of 1883 is void, whether it is regarded as an amendment of the first section of the act of 1852, or of the amendatory act of 1867. If of the former, it is invalid because that section was already repealed and superseded by the latter act. And if designed as an amendment of the act of 1867, it is void for failing to refer to the title of that act.

It may be also suggested that so much of the *proviso* in the first section of the act of 1883 as requires a justice of the peace elected for an incorporated town or city to reside therein is, if the act were not open to other objections, of

doubtful constitutionality. Section 6 of art. 6 of the Constitution of the State reads: "All county, township, and town officers shall reside within their respective counties, townships, and towns; and shall keep their respective offices at such places therein, and perform such duties as may be directed by law." R. S. 1881, section 156. The rule seems to be that where the Constitution defines the qualifications of an officer, the Legislature may not change or require additional qualifications unless the power to do so is conferred by the Constitution itself. *Thomas* v. *Owens,* 4 Md. 189; *In Matter of Dorsey,* 7 Port. 293; Cooley Const. Lim. 64. Involving the same principle, it has been held that the Legislature can not add to the constitutional qualifications of a voter. *Quinn* v. *State,* 35 Ind. 485; Cooley Const. Lim. 64; *Rison* v. *Farr,* 24 Ark. 161. While it is competent for the Legislature to prescribe where township officers shall keep their offices, it probably may not circumscribe the place of their residence to limits narrower than the boundaries of their respective townships.

Reaching the conclusion that the act of 1883, *supra,* is void, we are compelled to hold that there was error in overruling the appellants' demurrer to the second paragraph of the appellee's reply. For this reason the judgment of the court below is reversed, with instructions to sustain said demurrer.

Filed Dec. 11, 1884.