Nov. Term, 1854.

LANGDON
v.
APPLEGATE.

---

·LANGDON *v.* APPLEGATE and Others.

By the 21st section of article 4 of the constitution of 1851 it is ordained, that "No act shall ever be revised or amended by mere reference to its title; but the act revised, or section amended, shall be set forth and published at full length." *Held*, that the meaning of this section is, that the act revised, or section amended, shall be inserted at full length in the act amending or revising it.

Section 2 of the act of 1853, entitled "An act to regulate the taking of appeals from the Court of Common Pleas," which professes to amend section 22 of

the act to establish Courts of Common Pleas, &c., approved *May* 14, 1852, by reference merely to its title, is unconstitutional and void.

Section 21 of article 4 of the constitution of 1851 was borrowed from article 119 of the constitution of *Louisiana* of 1846—the words "set forth" being substituted for the word "re-enacted" in the latter constitution.

The section was reported to the convention and passed in the language of said article 119 of the constitution of *Louisiana,* and the words "set forth" were substituted for the word "re-enacted" by the committee on revision, &c., as a mere verbal alteration, and the change was afterwards sanctioned by the convention.

Where a constitutional provision is borrowed from the constitution of a sister state, the previous construction given to the provision by the legislature and judiciary of such state, is regarded as high authority as to its meaning.

The construction given to article 119 of the constitution of *Louisiana* by the legislature (with few exceptions) and by the judiciary of that state, has been, that the act revised, or section amended, should be set forth and published at full length in the act amending or revising it.

The acts of 1853 were published and circulated in the several counties, in conformity with the constitution, and took effect on the 24th of *July,* 1853.

Section 1 of the act of 1853 entitled "An act to regulate the taking of appeals from the Court of Common Pleas," repealed sections 13 and 20 of the act establishing Courts of Common Pleas.

The act of 1853 having contained no saving clause as to appeals pending in the Circuit Court, the Circuit Court was divested by said act of any jurisdiction to try the same.

APPEAL from the *Spencer* Circuit Court.

HOVEY, J.—At the *April* term, 1853, of the Court of Common Pleas of *Spencer* county, the appellees obtained judgment against *Langdon* on a promissory note. *Langdon* appealed to the Circuit Court, and at the *November* term following, that Court dismissed the appeal, for the want of jurisdiction, and this cause is now before us by his appeal from the Circuit Court.

The only question presented by the record is, whether appeals taken from the Courts of Common Pleas to the Circuit Courts, can be tried by the Circuit Courts after the publication of the acts of 1853.

" An act to establish Courts of Common Pleas, and defining the jurisdiction and duties of, and providing compensation for the judges thereof, approved *May* 14, 1852," contains the following sections:

" SEC. 13. An appeal shall lie from such Court of Common Pleas in all cases, to the Circuit or Supreme Court, at the option of the party applying therefor; and

an appeal may be taken from the judgment of a justice of Nov. Term, the peace to the Common Pleas or Circuit Court, as the 1854. party first filing his bond therefor may elect."

Section 20 provides the manner in which such appeals shall be tried.

LANGDON
v.
APPLEGATE.

" SEC. 21.   The judge of Common Pleas within his district, shall have power to grant restraining orders, injunctions, and writs of *ne exeat*, in the vacation of the Circuit Court, in relation to any matter pending in said Circuit Court, and at all times to exercise such powers, in relation to cases pending in his own Court, or any inferior Court.

" SEC. 22.   Any party aggrieved by the decision of the Court of Common Pleas in any of the cases contemplated by the preceding section, may appeal to the Circuit or Supreme Court, on giving bond with surety to the opposite party, in such reasonable penalty as the Court, in the exercise of a sound discretion, shall direct." 2 R. S., pp. 18, 19.

On the 4th day of *March*, 1853, the general assembly passed an act, containing the following sections:

" SEC. 1.   Be it enacted by the general assembly of the state of *Indiana*, That sections thirteen and twenty of an act entitled 'an act to establish Courts of Common Pleas, and defining the jurisdiction and duties of, and providing compensation for the judges thereof,' approved *May* 14, 1852, be and the same are hereby repealed.

" SEC. 2.   The twenty-second section of said act is hereby amended to read as follows, to-wit:

" Any person aggrieved by any order, sentence, judgment, or denial of any Court of Common Pleas, may, at his election, for the purpose of correcting any error therein, take the same to the Circuit Court of the county within and for which such Court of Common Pleas was held, in like manner, and subject to the same laws, rules, and regulations by and under which judgments of the Circuit Court and Court of Common Pleas may be taken to the Supreme Court by appeal, but when any such appeal shall be taken to or brought in the Circuit Court, and the judge of such Court shall be disqualified from hearing and determining the same, the clerk of such Circuit Court shall certify the

transcript of such cause to the Supreme Court, and such Supreme Court shall determine the same as if such appeal had, in the first instance, been taken to, or such writ of error had been originally brought in such Supreme Court." Acts 1853, p. 48.

These sections repeal sections 13 and 20 above referred to, and attempt to condense them in the 22d section, so as to embrace the whole of the law in relation to appeals. Is such an amendment constitutional? If·constitutional, the appeal was properly taken to the Circuit Court, but if unconstitutional, there being no other provision authorizing such appeals, the Circuit Court would have no jurisdiction.

We fully appreciate the importance of this question, both upon the past and future legislation of this state; but where the meaning of the constitution is clear, consequences can have no weight in giving it a different construction.

By the 21st section of the 4th article of the constitution, it is provided, that "No act shall ever be revised or amended by mere reference to its title; but the act revised, or section amended, shall be set forth and published at full length."

A section so plain and clear would scarcely seem to need construction. The convention, aware of the loose and imperfect manner in which bills were hurried through the general assembly, thought proper to throw several guards around the legislation of the state. Bills had been passed without being read; laws repealed by reference to the word, line, section or chapter; until the confusion that followed, left the statutes so imperfect and ambiguous, that the most able. jurists in the state were unable to ascertain their meaning.

To remedy these evils, the 21st section, with others, was adopted; and we think its clear and apparent meaning is, that the act revised, or section amended, must be inserted at full length, in the act amending or revising it; thus placing upon the same page, the old law, and the amendment.

It has been contended, that the correct reading of this section is, "No act shall ever be revised or amended by

mere reference to its title; but the act *as* revised, or section

*as* amended, shall be set forth and published at full length." Upon this construction, the general assembly acted in the passage of the laws of 1853; but it is easy to perceive that such a construction is at variance with the true grammatical meaning of the section. "No act shall ever be revised or amended, by mere reference to its title." It is scarcely necessary to say that the word "act" alludes to a law previously enacted; "but the act revised or section amended" (What act, what section? The same act first referred to and intended to be revised or amended) "shall be set forth and published, at full length."

The act of 1853 attempted to amend the 22d section by reference to its title. It is described as "the 22d section of said act," that is, "the 22d section of an act to establish Courts of Common Pleas, and defining the jurisdiction and duties of, and providing compensation for, the judges thereof, approved *May* 14, 1852." The *title* is the only part of the act or section alluded to, and consequently the amending act is in direct conflict with the first clause, which provides, that "No act shall ever be revised or amended by reference to its title."

We think no other reasonable construction can be given to this section, without interpolation, and we know of no rule that would permit such resort, where the language is unambiguous and clear.

The history of this constitutional provision, also confirms the view we have taken. It was copied from the 119th article of the constitution of *Louisiana*, of 1846. That article reads—

"No law shall be revised or amended, by reference to its title; but in such case, the act revised or section amended, shall be *re-enacted* and published at length."

As first introduced in the constitutional convention of this state, it read as follows:

"No act of the general assembly shall ever be revised or amended, by reference to its title; but in such case, the act revised, or section amended, shall be *re-enacted* and published at full length." Journal of Const. Conv. 170.

Nov. Term,
1854.

Langdon
v.
Applegate.

It was passed by the convention, and submitted to the "committee on revision, arrangements and phraseology," in this form, and was reported back, as it is now found in the constitution.   See Journal Conv. 926, 931.

It will be observed, that the committee struck out the word "*re-enacted*," and substituted the words "set forth," probably for the reason that there is a seeming inconsistency in re-enacting a law which, by the same act, is revised or amended.   To re-enact a law, would be to give it vitality, and it would be useless to give life to that which it was the intention of the amendment or revision to destroy.   Hence the substitution of the words "set forth," which were intended to convey the same idea, in regard to publishing the old act or section at full length.   To say that a section or bill just introduced, is to be re-enacted, and published at full length, is absurd, as neither could be re-enacted unless it had been formerly enacted.   Hence we conclude that the word *re-enacted* relates and refers to laws previously in existence, and that such laws must be published at full length.

If this construction be correct, it will sustain the position we have assumed in regard to section 21, article 4, as the committee on revision had no right to change the meaning of any section committed to them.   Their duty was confined to arranging and classifying the different sections, and making corrections of verbal or grammatical mistakes; and in reporting back section 21, as it now stands in the constitution, the journal of debates shows, that " Mr. *Owen* from the committee of revision made a report.   He explained the *verbal* alterations that had been made by the committee, and on motion of Mr. *Pettit*, the report was concurred in."   2 vol. Debates 2032.—Journal Conv. 926, 931.

These facts are only alluded to for the purpose of showing that the convention did not intend to make any alteration in the meaning of the section, as first introduced and finally adopted; in other words, that it amounted to the adoption of the 119th article of the constitution of *Louisiana* of 1846, stripped of its verbal inaccuracies.

It may be said, that the convention could not have intended to clog the wheels of 'legislation with so much labor; but it must be apparent that such labor will tend to greater certainty and perfection in legislation. The delegates, aware by experience, that great men are sometimes lazy, may have thought it advisable to remove every obstruction to a full understanding of bills when being enacted. By exhibiting the old law on the same page with the proposed amendment, the legislator would be enabled at a glance to see the contrast, and be better prepared to act understandingly. A section might seem unobjectionable, when considered by itself, that would fail to meet his approbation when compared with the old law. There are still further reasons in support of this construction. By publishing the old law with the amendments, the last act would always contain all the statutory provisions upon the particular subject; and repeals by implication, which frequently work so much unintentional mischief, would, to a great extent, be avoided, as the amendments could only affect the law contained in the amending act.

As the section under consideration was borrowed from the constitution of *Louisiana*, we are to look to their previous legislative and judicial construction, as being of very high authority as to its meaning. *Bond* v. *Appleton*, 8 Mass. 472.—*Myrick* v. *Hasey*, 27 Maine R. 9.—*Field* v. *Adams*, 21 Vt. R. 256.

The legislative construction of this provision in *Louisiana*, has been in conformity with the view we have taken. With a few exceptions, their acts fully set forth the old law, in *haec verba*. See Acts 1847, 1848, 1849, 1850.

In the case of *Walker* v. *Caldwell*, 4 La. Ann. R. 297, an act which failed to set forth the old law underwent adjudication, and *Eustis*, C. J., in delivering the opinion of the Court, said, "this act purports to do that which the constitution declares shall not be done, and the act must yield to the operation of the constitution, or the articles of that instrument providing for the forms of legislation, be held of no effect. Those forms have been placed under the guarantee of the constitution, as a safeguard against errors and

Nov. Term,
1854.

THE COMMON
COUNCIL OF
THE CITY OF
RICHMOND
v.
THE STATE.

abuses in the legislative powers." The act was decided unconstitutional and void.

This case was subsequently approved, and the same rule laid down. See *The Heirs of Duverge* v. *Salter and Marcey*, 5 La. Ann. R. 94.

We are therefore of opinion that the 1st section of the act of *March* 4, 1853, repealed said sections 13 and 20 of the revised statutes which authorized appeals to the Circuit Courts; and that the 2d section of said act, which attempts to amend said 22d section, without setting out the same at full length, is unconstitutional and void.

The acts of 1853 were published and circulated in the several counties in the state in conformity with the constitution, and took effect on the 24th day of *July*, 1853. The appeal to the Circuit Court was taken in *April* preceding, and the appellant insists that as the appeal was authorized by law when taken, the publication of the acts of 1853 could not divest the Circuit Court of jurisdiction. The position assumed is not tenable, as there is no saving clause in the act as to pending cases.   *Sprigs* v. *The State*, 2 Ind. R. 75.—*Taylor* v. *The State*, 7 Blackf. 93.

STUART, J., dissented to so much of the foregoing opinion as holds that the act revised, or section amended, must be set forth and published at full length in the act revising or amending it.

*Per Curiam.*—The judgment is affirmed with costs.

*T. J. Langdon*, for the appellant.

*J. Pitcher*, *N. B. Taylor*, and *J. Coburn*, for the appellees.

