## 382    SUPREME COURT OF INDIANA.

Greencastle Southern Turnpike Co. *v.* The State, on the relation of Malot.

THE GREENCASTLE SOUTHERN TURNPIKE COMPANY *v.* THE STATE, on the relation of MALOT.

CONSTITUTION.—AMENDMENT OF LAWS.—Section 21 of article 4 of the constitution of Indiana, which provides that "no act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length," does not require that the old act or section shall be set out at length, but only that the revised or amended act shall be complete in itself.

SAME.—CASES OVERRULED.—*Langdon* v. *Applegate*, 5 Ind. 327, and the decisions following that case, in which a contrary doctrine is held, are overruled.

PLANK ROADS.—TIME OF COMPLETION.—The 5th section of the act of *February* 28th, 1855, (1 G. & H. 487) giving to plank and macadamized, &c., road companies ten years, instead of four, to complete their roads, is constitutional, not as an amendment of the act of 1852, but as an independent provision.

APPEAL from the *Putnam* Circuit Court.

GREGORY, J.—Information under the code, (2 G. & H., § 749, clause 4, p. 322,) against the appellant to enforce an alleged forfeiture of its rights and privileges as a corporation. The company was incorporated under the act of *May* 12th, 1852, 1 G. & H., p. 474, for the purpose of constructing a macadamized road. The complaint is in two paragraphs. A demurrer was sustained to the first, and overruled as to the second, and this latter ruling is assigned for error.

The question presented involves the validity of the fifth section of the act of *February* 28th, 1855, 1 G. & H. 487, which provides "that every plank, macadamized, and gravel road company in this State may have ten years, instead of four years, from the date of their organization, in which to complete their road." That part of section 14 of the act of *May* 12th, 1852, *supra*, to which the foregoing section relates, is as follows:

"Every such company or association shall cease to be a body corporate if, within two years from the time of filing a copy of their articles of association with the county re-

corder, they shall not have commenced the construction of their road, and expended at least ten per cent. of their capital stock, and if, within four years from such time, such road shall not be completed."

Section 21, article 4, of the constitution of this State provides that "no act shall ever be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length." The words "act revised or section amended" would seem to admit of but one interpretation. "Blackstone revised," "Kent revised," would be understood to mean the new, and not the old books. So, an amended edition of Blackstone or Kent would be understood to signify the new work, with the errors of the old corrected and proper additions made. It would mean, however, the entire work as revised and amended, and not the changes alone. The legislature of 1853, the first after the constitution was adopted, so understood this section, and this was, as we think, the general opinion until *Langdon* v. *Applegate*, 5 Ind. 327, was decided. But a somewhat serious question arises as to the propriety of overruling the previous decisions of this court, as thereby questions of property may be affected. It is a sufficient answer to this, to say that the construction of this section of the constitution is a rule of legislation, and not a rule of property. There are very few of the rulings of this court that do not indirectly affect questions of property. The principle recognized in *Rockhill* v. *Nelson et al.* 24 Ind. 422, has no application to this question. That was a well settled rule of property, in the construction of a statute subject to change at the will of the legislature, and that could well be so construed, and which had long been acquiesced in without such change, thereby receiving the tacit approval of the law-making power. But what is the judicial history of the question now involved?

In *Langdon* v. *Applegate*, *supra*, decided in 1854, STU-ART, J., dissented. In *Wilkins et al.* v. *Miller*, 9 Ind. 100, the same judge, in delivering the opinion of the court, says:

384      SUPREME COURT OF INDIANA.

.Greencastle Southern Turnpike Co. *v.* The State, on the relation of Malot.

"Under the ruling of the majority of the court in *Langdon* v. *Applegate,* 5 Ind. 327, the first, second, third and fourth sections are unconstitutional and void. Though I did not then, nor can I now, concur with the court in that opinion, yet it stands as the law till overruled."

In *Littler* v. *Smiley,* 9 Ind. 116, GOOKINS, J., in delivering the opinion, says: "In the case of *Langdon* v. *Applegate,* 5 Ind. 327, such an amendment was held to be unconstitutional and void. Were this an original question, I should not so decide."

In *Kennon* v. *Shull,* 9 Ind. 154, this court was urged to overrule the opinion in *Langdon* v. *Applegate,* in an able argument, in which *Walker* v. *Caldwell,* 4 La. An. 297, *Duverge* v. *Salter,* 5 *id.* 94, and the statutes of *Louisiana* from 1847 to 1854 were reviewed. In a *per curiam* this court says: "We do not perceive that the slight verbal inaccuracy in Judge HOVEY's quotation from the *Louisiana* constitution affects the force of his argument; nor was the decision in the case put upon that, but the language of our own constitution."

In *Langdon* v. *Applegate,* it is claimed by HOVEY, J., speaking for the court, that section 21, article 4, *supra,* was borrowed from a like provision of the constitution of *Louisiana,* and that the decisions of the Supreme Court of that State on the subject are of high authority, and *Walker* v. *Caldwell,* and *Duverge* v. *Salter, supra,* are cited in support of the ruling of the court. The constitution of *Louisiana* was adopted in 1845. The case of *Walker* v. *Caldwell, supra,* was decided in 1849. The provisions of the constitution of *Louisiana* then under consideration are as follows:

"Article 118. Every law enacted by the legislature shall embrace but one object, and that shall be expressed in its title.

"Article 119. No law shall be revised or amended by reference to its title; but in such case, the act revised, or section amended, shall be re-enacted and published at length."

The title and the first section of the act in question, of 1848, are as follows:

"An act to amend the act entitled 'an act to provide for the liquidation of the affairs and payment of the debts of insolvent corporations,' approved *May* 4th, 1847.

"Section 1. Be it enacted," &c., "That from and after the expiration of the term of office of the liquidators appointed by virtue of the act entitled 'an act to provide for the liquidation of the affairs and payment of the debts of insolvent corporations,' approved the 4th of *May*, 1847, the governor of this State be, and he is hereby, authorized to appoint the same, or such other liquidators as to him may seem proper, to liquidate the affairs of *The Clinton and Port Hudson Railroad and Banking Co.*, and *The Atchafalaya Railroad and Banking Co.*, who shall continue in office until the affairs are liquidated and settled, provided the same shall not exceed two years; and the liquidators appointed shall give bond and security, and conform to the provisions of the act hereby amended."

The court, after reciting the facts, says: "The act of 1848 purports expressly to amend the act of 1847, by reference to its title; and without reference to the act of 1847, its provisions would be inoperative. It purports to do that which the constitution declares shall not be done, and the act must yield to the operation of the constitution, or the articles of that instrument providing for the forms of legislation be held of no effect. Those forms have been placed under the guaranty of the constitution, as a safeguard against errors and abuses in the legislative power. It has become the fundamental law of the State that every law enacted by the legislature shall embrace but one object, and that that object shall be expressed in the title of the law; that the legislature shall never adopt any system or code of laws by general reference, but in all cases shall specify the several provisions of the law it enacts, and that no law shall be amended or revived by reference to its title. *. * *

Considering, therefore, that the first section of the act of *March* 16th, 1848, is in direct conflict with articles 118 and 119 of the constitution, the appointment of the plaintiff under it as a liquidator," &c., "confers upon him no capacity to maintain the present action against the defendant." The case of *Duverge* v. *Salter* simply held that the object of the act under consideration was not expressed in the title, and has no bearing on the question before us. Since the decision in *Walker* v. *Caldwell, supra,* the legislature of *Louisiana,* with a few exceptions, has adopted the following formula:

"Be it enacted, &c., that —— section of an act entitled, &c., be amended and re-enacted so as to read as follows."

We have carefully looked through the revised statutes of *Louisiana* of 1856, and find no instance wherein the old as well as the new enactment is set forth at length.

The reading and the object of section 21, article 4, are plain. That section requires that every enactment of the legislature shall be complete within itself, that the present state of the law on any given subject may be learned by reading the last enactment, without the necessity of resorting to the old. This can be done without setting forth at length the old law, in every case where the new embraces all of the old left in force. The old law, and the mischiefs existing under it, ought not to be forgotten in giving interpretation to such clauses. Let us mention them. Under the constitution of 1816, a section might have been amended by the passage of an act running thus:

"Be it enacted, &c., that section 26 of an act entitled 'an act regulating descents and the apportionment of estates,' approved *May* 14th, 1852, be and it is hereby amended by inserting after the word 'within' the words 'neither brothers and sisters, nor their descendants.'"

The mischiefs of this practice were numerous, and in some respects grievous. It required much labor and pains on the part of legislators to enable them to understand the effect of such bills. Sometimes, in the haste

of the last hours of a session, this care being scarcely practicable, bills in this form were passed which never could have received legislative sanction if they had been understood, and in the administration of the law constant reference and comparison of statutes were necessary to render such acts intelligible. It was merely to prevent the mischiefs of this mode of legislation that the clause in question was inserted in the constitution of 1851, and this is completely accomplished by requiring the amendatory act to set forth, at full length, the section as amended. To set it forth only as it was before amendment, would but partially remedy the evil, for then the law, as it would stand after amendment, need not be given, but might be left to be ascertained by examination and comparison. If this be the only constitutional requirement, then an act in the following form would be valid:

"Be it enacted, that section 26 of an act entitled," &c., "which reads as follows (setting it out), be amended by inserting after the word 'mother,' the words, &c., &c."

A little consideration will render it obvious that this would be a very inadequate remedy for the mischiefs intended to be prohibited. Inasmuch as the language of the constitution can, without violence, and, indeed, as we think its plain meaning imports, be so interpreted that the mischiefs intended to be prevented may be wholly prevented, every principle of sound construction requires that it shall be.

Again, in *Armstrong* v. *Berreman,* 13 Ind. 422, in 1859, five years after the decision in *Langdon* v. *Applegate, supra,* this court was again pressed to reconsider this question. Under such circumstances it cannot be said of this ruling that this is a common error, within the meaning of the maxim, "*communis error facit jus.*"

In *Green* v. *Neal,* 6 Peters 291, the Supreme Court of the *United States* overruled their own decision in *Patton's Lessee* v. *Easton,* 1 Wheat. 476, although a rule of property, for the purpose of making the ruling of that court

conform to the ruling of the Supreme Court of *Tennessee* in the construction of a statute of that State. McLEAN, J., in delivering the opinion of the court, says: "This is a question of grave import, and should be approached with great deliberation. It is deeply interesting in every point of view in which it may be considered. As a rule of property, it is important; and equally so, as it regards the system under which the powers of this tribunal are exercised."

In *The State of Iowa ex rel., &c.,* v. *Wapello County,* 13 Iowa 388, decided in 1862, the court overruled a series of their own decisions, running back to 1853, affecting the validity of obligations assumed by municipal corporations in taking stock in railroad companies, and involving not only a question of property, but the rights of innocent persons who had invested their money on the faith of the previous rulings of that court.

In the question under consideration there is involved a rule of legislation as lasting as the constitution, and if we adhere to the previous rulings of this court, one of great practical inconvenience. Indeed, it would, under the rule heretofore adopted, be almost impossible to revise the code, or any other act of great length. It has frequently, as in the case of the act for the incorporation of cities, driven the legislature, at great risk of the rights of parties, to repeal whole statutes and re-enact others, varying only in some few particulars from the old one.

The evils growing out of the previous rulings of this court are not confined to the inconvenience of legislation, but frequently grow out of mistakes in copying the old law. A striking instance of this has lately been presented for our consideration. The legislature, in *March,* 1859, passed an act fixing the times of holding the terms of the several common pleas courts of this State. In *March,* 1861, they undertook to amend the fifteenth section of that act, and in setting out the section amended, the words "as long as" are used for the word "while." In *May,* of the same

year, at the special session, they passed another act, purporting to amend the original section, as it stood in the law of 1859, in which the original, and not the section as amended by the act of *March*, 1861, was set forth. In several of the counties affected by the change, the courts have acted under the law of *March*, 1861, holding that the last act was void, under the ruling in *Langdon* v. *Applegate*, *supra*, for not setting forth at full length the section amended. If we should adhere to the ruling in *Langdon* v. *Applegate*, it would now be a very grave and embarrassing matter to determine the effect of the mistake in the recital of the original section in the act of *March*, 1861.

The question is not, however, now without its difficulties, in either view of the subject, but these difficulties have their origin in the previous rulings of this court. Under this constitutional provision, as we understand it, all these complications would have been avoided; and to remove the cause, and thereby prevent their recurrence, would, in our judgment, overbalance any inconvenience growing out of the overruling of the long line of decisions of this court on this subject; particularly in view of the act for the repeal of statutes not in conformity with the ruling of this court in *Langdon* v. *Applegate*, *supra*, and limiting actions arising out of the same, or for a violation thereof. Acts of 1867, p. 204.

The previous decisions of this court, holding that the old act or section to be revised or amended must be set forth with the act or section as revised or amended, are overruled. But the fifth section of the act of 1855, *supra*, cannot be maintained as an amendment to section 14 of the act of 1852, *supra*, for the reason that the section as amended is not "set forth and published at full length." It remains to inquire whether the section in question can be maintained as an independent provision.

The title of the act is "an act to amend the act entitled 'an act authorizing the construction of plank, macadamized and gravel roads, and to empower the same to make sale

of a portion of their roads.'"   "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." 1 G. & H., § 19, p. 39. The object of the act in question, it is true, is the amendment of the act of *May* 12th, 1852; but the subject is indicated in the title of the latter act.   Matters properly connected with the subject of the act need not be expressed in the title.   The legislature has indicated one matter in the title that could not be maintained on any other ground than that it is properly connected with the main subject of the act.   We cannot see why an extension of the time in which such roads are to be completed is not as germain to the subject of the act as the power of sale.   We think that the section in question is constitutional, and that the court erred in overruling the demurrer to the second paragraph of the complaint.

The judgment is reversed, with costs, and the cause remanded, with directions to sustain the demurrer to the second paragraph of the complaint.

*D. E. Williamson* and *J. A. Matson*, for appellant.

*S. Claypool*, for appellee.