WAUGH ET AL. *v.* RILEY ET AL.

WILL.—*Descent.*—*Revival of Statute.*—*Limitation of Action.*—*Statute Construed.*—A. died testate in August, 1860, seized in fee-simple of certain real estate, leaving surviving him his widow, two sisters and the descendants of a deceased brother and sister, but leaving neither father, mother,

child, nor the descendants of any child surviving him. His will contained the following provision : " I give and bequeath unto my wife, * * for and during her natural life, all my real estate and personal property of whatever kind or nature, to have and to hold and dispose of as she may choose." The will made no disposition of the residue and remainder of decedent's estate.

*Held,* that said testator must be regarded as having died intestate as to the residue of his estate over and above the life-estate devised to his wife.

*Held,* also, that the act of March 9th, 1867, 1 R. S. 1876, p. 941, repealed the amended sections 25 and 26 of the law of descents and revived the original sections 25 and 26 of the act of May 14th, 1852, 1 R. S. 1876, p. 413 ; and, under said original sections, the entire estate of A. descended to his widow, no action to determine the title to the same having been begun by the sisters and the descendants of the deceased brother and sister of the decedent within ninety days after the passage of said repealing act, as provided for therein.

From the Greene Circuit Court.

*L. Shaw* and *W. J. Baker*, for appellants.

*A. G. Cavins* and *E. H. C. Cavins*, for appellees.

Howk, C. J.—In this action the appellants, as the heirs at law of John L. Waugh, deceased, sued one Elza Riley and George W. Riley, as defendants, to recover the possession of certain real estate, particularly described, in Greene county, Indiana, and for damages for being kept out of the possession thereof. In their complaint the appellants alleged that they were the owners in fee-simple, and entitled to the possession, of said real estate, and that the defendants held possession thereof without right, and, for one year past, had kept the appellants out of the possession thereof, to their damage in the sum of five hundred dollars. Wherefore, etc.

The defendants answered the appellants' complaint by a general denial thereof. The issues joined were tried by the court, and, at the appellants' request, the court made in writing a special finding of the facts and of its conclusion of law thereon. To the court's conclusion of law the appellants excepted.

The defendants moved the court for a new trial, as to a certain specified part of the special finding of facts, which motion was overruled, and to this ruling they excepted and filed their bill of exceptions.

The appellants moved the court for judgment in their favor upon the special finding of facts, notwithstanding the conclusion of law thereon, which motion was overruled and to this decision they excepted. The court then rendered judgment upon and in accordance with its conclusion of law, that the appellants, the plaintiffs below take nothing by their suit, and that the defendants recover their costs.

In this court the appellants have suggested that, since the rendition of the judgment below, the defendant Elza Riley had died intestate, leaving as his only heirs at law his widow, Ann Riley, his six children, setting out their names and the names of the husbands of two of them; all of whom and the defendant George W. Riley have been made appellees, and as such have appeared by counsel and joined in error, and assigned a cross error in this court.

The appellants have assigned, as errors, the following decisions of the circuit court:

1.  In its conclusion of law upon its special finding of facts; and,

2.  In overruling their motion for a judgment in their favor, on the special finding of facts, notwithstanding the conclusion of law.

It is necessary, we think, to an intelligible presentation of the questions involved in this case, and to a proper understanding of our decision of those questions, that we should first give a summary, at least, of the court's special finding of facts.

The court found the following facts: " That, in August, 1860, one John L. Waugh died in Greene county, Indiana, seized in fee-simple of the following described land in said

county, to wit: The east half of the north-west quarter, and the north half of the north-east quarter of the south-west quarter, of section thirty-four, in township 6 north, in range 4 west, containing in all one hundred acres, more or less; that the said Waugh left him surviving Mary Waugh, his widow, but no father or mother, or children or their descendants. His brothers and sisters now living, and the descendants now living of such as are dead, are the plaintiffs in this suit, as follows: " (Here follow the names of the appellants, with their relationship to the deceased, which we omit) ; " that before his death the said John L. Waugh executed the following as his last will and testament, to wit:

" ' In the name of God, Amen : I, John L. Waugh, of the county of Greene, in the State of Indiana, being of sound mind, memory and understanding, do hereby make and publish my last will and testament in manner following, to wit, that is to say : First, it is my desire and direction, that all of my just debts be fully paid and satisfied. 2d, I give and bequeath unto my wife, Mary, for and during her natural life, all my real estate and personal property of whatever kind or nature, to have and to hold and dispose of as she may choose. Thirdly, I give and bequeath unto George Fry, a boy whom I raised, three hundred dollars, to be paid out of the sale of my real estate, provided he be living at the time it is sold. And, lastly, I hereby nominate and appoint Elza Riley and my wife, Mary, executors of this my last will and testament; hereby revoking and annulling all other wills by me made heretofore, and ratifying and confirming this and none other, as my last will and testament. In witness whereof I have hereunto set my hand and seal this the 12th day of July, in the year of our Lord one thousand eight hundred and sixty.

(Signed,) " ' John L. Waugh. [Seal.] ' "

We omit the attestation of this will.

" That, after the death of said John L. Waugh, the said will was duly probated by the attesting witnesses, in the office of the clerk of the common pleas court of Greene county, Indiana, and duly recorded, together with the proof thereof, in volume 2 of the records of wills, on pages 47 and 48, on the 30th day of August, 1860; that, after the death of said John L. Waugh, his widow, Mary Waugh, elected to take the provisions made for her by said will, and proceeded to take possession of the said lands heretofore described, under and by virtue of said will and the title conveyed thereby, and held and continued in the possession thereof until her death, which occurred on the — day of ———, 1875; that said Mary Waugh left surviving, as her only heirs, the following persons, to wit : " (Setting out the names of her mother, and nine brothers and sisters, which we omit.) " And that, after the death of the said Mary Waugh, her said heirs took possession of, and as such heirs claimed title to, said lands."

The court further found that, on the — day of ———, 1875, some of the said heirs of said Mary Waugh, deceased, commenced a suit against her other heirs, for the March term, 1876, of the court below, to obtain the partition of said lands among the said heirs of said decedent, alleging that the lands could not be divided without injury to them, as the owners thereof, and asking that the said lands be sold under the order of said court; that, at the March term, 1876, of said court, in said suit for partition, the appellants in this action, as the heirs at law of said John L. Waugh, deceased, appeared and filed their petition and motion to be made defendants in said partition suit, and their answer therein, wherein they alleged, in substance, that they were tenants in common with the parties to said partition suit, of the lands in controversy ; that the parties to said suit claimed to be the owners of said lands as the

heirs at law of Mary Waugh, who was the widow of John L. Waugh, who had died testate, in Greene county, Indiana, in August, 1860, leaving the said Mary as his widow, but leaving neither father nor mother, nor child nor the descendants of any child, surviving him ; that, at the time of his death, the said John L. Waugh had left two sisters and the descendants of a deceased brother and sister, who are the appellants in this action ; that, by his last will and testament, the said John L. Waugh gave his wife, Mary, only an estate for her life in the lands in controversy, but made no disposition of his property, real or personal, after the death of his said wife ; and that it was the intention of the testator, and he believed, when he executed his will, that all of his estate, real and personal, would, by the will, descend to his brother and sisters and their descendants. In their petition and answer the appellants in this action claimed that they, as the heirs at law of said John L. Waugh, deceased, had become and were jointly the owners in fee-simple of the undivided two-thirds part of the lands in controversy, setting out in detail the respective shares of each of them therein ; and they asked to be made defendants in said partition suit, and that all of their shares of said lands might be set off to them in one body, and for other proper relief.

To this answer of the appellants in said partition suit, the plaintiffs therein demurred upon the ground that it did not state facts sufficient to constitute a defence to their action, or any part thereof, which demurrer was sustained by the court, and the appellants excepted ; and, declining to amend, it was considered by the court that their said answer was insufficient in law, and that the plaintiffs in said suit recover of said appellants their costs in that behalf expended.

The court further found that the trial of said partition

suit resulted in a finding that the parties thereto, as the heirs at law of said Mary Waugh, deceased, were the owners of said lands, and that the same could not be divided without injury to said owners; and judgment was rendered accordingly for the sale of the lands, and appointing a commissioner to make such sale; and that in May, 1876, the said commissioner, in pursuance of said judgment and order, had sold the said lands to the defendants in this action, who were in possession thereof, claiming title thereto under said judgment and sale; and that afterward, on the 1st day of September, 1876, and before the commencement of this action, the appellants had demanded possession of said lands from the defendants, who were then in the possession thereof under said judgment and sale.

Upon the foregoing facts the court's conclusion of law was, that the appellants, the plaintiffs below, were not entitled to the possession of said lands.

Did the court err in its conclusion of law upon its special finding of facts? This is the first question presented for our decision. It will be seen from the court's special finding that there is but little, if any, controversy between the parties as to the actual facts of this case. John L. Waugh died testate in August, 1860, in Greene county, Indiana, seized in fee-simple of the lands in said county in controversy in this action. He left surviving him the said Mary Waugh, as his widow, but he left neither father nor mother, nor any child nor the descendants of any child, surviving him. By the terms of his last will and testament, as we have seen, the said John L. Waugh devised the said lands to his wife, Mary Waugh, for and during her natural life; but, in and by his said will, he made no devise whatever, nor did he attempt to make any devise, of the fee-simple of said lands. The language of his will on this point is this: "I give and bequeath unto my wife, Mary, for and during her natural life, all my real estate and per-

sonal property of whatever kind or nature, to have and to hold and dispose of as she may choose." This is all that is said in his last will and testament in regard to the disposition of his property, real or personal. The will gave to the testator's wife, Mary, an estate for her life in all his lands and personal property, and made no disposition whatever of the residue and remainder of his estate in either said lands or personal property. As to such residue and remainder of his estate, over and above the estate devised to his wife, Mary, for her life, in all his lands and personal property, the testator, John L. Waugh, must be regarded as having died intestate. *Armstrong* v. *Berreman*, 13 Ind. 422; *Rusing* v. *Rusing*, 25 Ind. 63; *Lindsay* v. *Lindsay*, 47 Ind. 283; *Dale* v. *Bartley*, 58 Ind. 101.

The court found as a fact that the testator's wife, Mary Waugh, " elected to take the provisions made for her by said will, and proceeded to take possession of the said lands heretofore described, under and by virtue of said will, and the title conveyed thereby." The testator's fee-simple estate in said lands was not devised nor disposed of in any manner by his last will; but, as to that estate, as we have seen, he died intestate. His fee-simple estate in said lands therefore descended at his death to the person or persons, and none other, who would have inherited the same under the provisions of the statute of this State regulating descents and the apportionment of estates, precisely as such estate would have descended if he had died without having made any will, subject only to the estate therein of his wife, Mary Waugh, for and during her natural life.

Under the facts found by the court, it would seem to be certain that the fee-simple estate of the testator, John L. Waugh, in all his lands, and the absolute ownership of all his personal property, would have gone at his death, and did go, to his surviving wife, Mary Waugh, under the

provisions of section 26 of "An act regulating descents and the apportionment of estates," approved May 14th, 1852, if it can be correctly said that this section 26, as it read at the time of its enactment and as it now reads, regulated the descent of that part of the testator's estate, as to which, as we have seen, he must be regarded as having died intestate. This section 26, as originally enacted and as it now reads, provides as follows:

"Sec. 26. If a husband or wife die, intestate, leaving no child, and no father or mother, the whole of his or her property, real and personal, shall go to the survivor." 1 R. S. 1876, p. 413.

By section 4 of an act to amend certain specified sections of the above entitled act regulating descents, etc., approved March 4th, 1853, said section 26 of said act was amended to read as follows:

"If a husband or wife die intestate, leaving no child, and no father or mother, nor brothers and sisters, nor their descendants, the whole of his or her property, real or personal, shall go to the survivor." Acts 1853, p. 56.

By section 3 of said amendatory act of March 4th, 1853, section 25 of the above entitled act of May 14th, 1852, regulating descents, etc., was amended to read as follows:

"If a husband or wife die intestate, leaving no child, but leaving a father and mother or either of them, then his or her property, real and personal, shall descend, one-half to the widow or widower, and one-half to the father and mother jointly, or to the survivor of them; and if there be no father nor mother living, then the one-half shall go to the brothers and sisters of the deceased, or their descendants, if any there be, in equal shares: *Provided*, that if the whole amount of property, real and personal, do not exceed one thousand dollars, the whole shall go to such widow or widower." Acts 1853, p. 56.

It will be observed that this amended section 25 differs

from the original section 25, as it appears in the original act of May 14th, 1852, and as it is now in force as a law of this State, in these particulars: That in the original section, now in force, it is provided that if a husband or wife die intestate, leaving no child, but leaving a father and mother, or either of them, then his or her property, real and personal, shall descend three-fourths (instead of one-half as in the amended section) to the widow or widower, and one-fourth (instead of one-half as in the amended section) to the father and mother jointly, or to the survivor of them; and that the original section, now in force, contains no provision whatever, in any event, in favor of "the brothers and sisters of the deceased, or their descendants." 1 R. S. 1876, p. 412.

Under the decision of this court in the case of *Langdon* v. *Applegate*, 5 Ind. 327, the amended sections 25 and 26 of the act regulating descents, etc., as amended by the act of March 4th, 1853, and above set out, were unconstitutional and void, as in violation of section 21 of article 4 of the constitution of this State of 1851, and were so regarded by all the courts of this State. In the section referred to of the constitution of 1851, it was provided that "No act shall ever be revised or amended by mere reference to its title; but the act revised, or section amended, shall be set forth and published at full length." In the case cited it was held by this court that this constitutional provision required the setting forth and publication at full length in an amendatory act, not only of the amended section, but also of the original section which was to be thereby amended.

In the case of *The Greencastle Southern Turnpike Co.* v. *The State, ex rel.*, 28 Ind. 382, decided at the November term, 1867, this court, as then constituted, gave an entirely different construction to the constitutional provision above quoted, and expressly overruled the case of *Langdon* v. *Applegate, supra,* and all subsequent cases wherein the doc-

trine of that case had been reasserted and followed. In the case in 28, Ind. 382, the constitutional provision above quoted was construed so as to require that, in any revising or amendatory act, the new revised act or the new amended section, and not the old act before its revision nor the old section before its amendment, "shall be set forth and published at full length." This is now, and, as we may reasonably suppose, will continue to be, the accepted construction of this provision of the constitution.

The effect of this later construction was to give vitality and validity to a number of legislative enactments, which, before that time, had been regarded and treated as unconstitutional and void, and, among others, to said amended sections 25 and 26, above set out, of the act regulating descents. Before the case in 28 Ind. 382 was decided by this court and, probably, in anticipation of such a decision, the General Assembly of this State passed "An act for the repeal of statutes not in conformity with the ruling of the Supreme Court, in case of Langdon v. Applegate and others, and limiting actions arising out of the same, or for a violation thereof," approved March 9th, 1867. This act contained the following provisions:

In section 1, omitting the enacting clause, it was provided, "That all laws heretofore passed not in conformity with the ruling of the Supreme Court of this State in the case of Langdon against Applegate and others, reported in the fifth volume of the Indiana Reports, on page 327, are hereby repealed.

"Sec. 2. All actions arising out of or for a violation of any law repealed by this act, shall be commenced within ninety days from the passage of this act, and not afterwards."

Section 3 declared an emergency existing, and provided that the act should be in force from and after its passage. Acts 1867, p. 204; 1 R. S. 1876, p. 941.

It will thus be seen that, while under and by force of the decision of this court, reported in 28 Ind. 382, all laws passed before the 9th day of March, 1867, which were not in conformity with the ruling of this court in the case of *Langdon* v. *Applegate, supra,* were to be regarded and were valid laws from the times of their enactment, yet all these laws were, on said last named day, under and by said repealing act of that date, absolutely and unconditionally repealed. So that the amended sections 25 and 26 of the act regulating descents, etc., as amended by the aforesaid act of March 4th, 1853, were valid laws of this State, in force from and after the time the Session Acts of 1853 were published and circulated in the several counties of this State, by authority, until the said repealing act, above set out, was approved and became a law, on the 9th day of March, 1867.

The amended sections 25 and 26 of the act regulating descents, as amended by the aforesaid act of March 4th, 1853, covered the whole subject-matter of the original sections 25 and 26 of the original act of May 14th, 1852, regulating descents, were inconsistent therewith, and were evidently intended by the Legislature to supersede and take the place of said original sections 25 and 26. Manifestly, therefore, as it seems to us, the said amended sections repealed by implication the said original sections 25 and 26. *The President, etc., of the P. & I. Railroad Co.* v. *Bradshaw,* 6 Ind. 146 ; *Dowdell* v. *The State,* 58 Ind. 333 ; *The State* v. *Christman,* 67 Ind. 328.

When, by the provisions of the 1st section of the above entitled repealing act of March 9th, 1867, the said amended sections 25 and 26, as amended by the aforesaid act of March 4th, 1853, were absolutely and unconditionally repealed, as we have seen, the effect of such repeal, under the common-law rule in such cases, which then prevailed in this State, was to revive the original sections 25 and 26

of the original act of May 14th, 1852, and since such repeal these original sections have been and now are the law of this State on the subject-matter thereof. *Leard* v. *Leard*, 30 Ind. 171; *Nebeker* v. *Rhoads*, 30 Ind. 330; *De-Moss* v. *Newton*, 31 Ind. 219; *Lindsay* v. *Lindsay*, 47 Ind. 283; *Longlois* v. *Longlois*, 48 Ind. 60; and *Niblack* v. *Goodman*, 67 Ind. 174.

In the case at bar it will be seen from the special finding of facts, that all the parties to this action claim title to the lands in controversy under and through the testator, John L. Waugh. The parties on both sides concur in saying that, as to the fee-simple estate of said John L. Waugh in said lands, he died intestate; but the appellants claim that this estate in said lands, or at least the two-thirds part thereof, descended directly to them as the sisters and the descendants of a deceased brother and sister of said John L. Waugh, deceased, under the provisions of the statute of this State regulating descents, etc., in force at the time of his death. On the contrary, the appellees claim, and the court apparently has so decided, that the fee-simple estate of said John L. Waugh, deceased, in said lands, as to which estate therein he died intestate, descended at his death to his surviving wife, Mary Waugh, under the law of descents then in force, notwithstanding she elected to take the provisions made for her by said decedent's last will. It seems to us that the election of the surviving wife, Mary Waugh, to take the provisions made for her in and by said will, can hardly be said to affect, in any manner, the question presented for the decision of this court in this case. If the testator had, by his last will, devised and disposed of his entire estate in the lands in controversy, then the election of his surviving wife as to whether she would take under his will, or under the statute of descents, would have had, perhaps, an important bearing on the rights of the parties in such lands. But the testator, as we have

seen, must be regarded as having died intestate as to his estate in fee in said lands; and, having thus died intestate, it would seem to be clear that his fee-simple estate in said lands would descend at his death to the person or persons, and none other, to whom it would have descended if such testator had died absolutely or wholly intestate, subject only to the estate therein, created by his said will, of his surviving wife, Mary Waugh, for and during her natural life.

The question for decision, therefore, remains, and in this case it is an important, if not a controlling, question: To whom, under the facts found by the court and the law of descents applicable thereto, did the fee-simple estate of the said John L. Waugh, deceased, in the lands in controversy in this action, descend at the time of his death?

The court found, as facts, that the said John L. Waugh having executed on the 12th day of July, 1860, his last will and testament, a copy of which is given in this opinion, died in the following month, August, 1860, seized in fee-simple of the lands in controversy in this action, leaving neither father nor mother, nor any child nor the descendants of any child, surviving him, but leaving his wife, Mary Waugh, and leaving also two sisters and the descendants of a deceased brother and sister, who were the plaintiffs below and are the appellants in this court in this suit, surviving him. When John L. Waugh died, in August, 1860, the original sections 25 and 26 of the original act of May 14th, 1852, regulating descents, etc., were the accepted law of this State on the subject-matter thereof; and, under the provisions of these two sections, it seems to us, there would have been no room for doubt in regard to the person or persons to whom the fee-simple estate of the said John L. Waugh, under the facts found by the court, descended at the time of his death. The language of the original section 26 was and is too plain for construction; it gave the whole property, real and personal, of the said

John L. Waugh, as to which he died intestate, under the facts found by the court, to his surviving wife, Mary Waugh.

But, as we have seen, this court, at its November term, 1867, in the case before referred to in 28 Ind. 382, so construed section 21 of article 4 of the constitution of this State, of 1851, as that the amended sections 25 and 26 of the statute regulating descents, etc., as amended by the aforesaid act of March 4th, 1853, must now be regarded, under such construction, as valid enactments, and, as such, as constituting the law of this State on the subject-matter thereof, in force at the time of the death of the said John L. Waugh, deceased. It will be seen from the provisions of these two amended sections, which we have heretofore set out *in extenso* in this opinion, that all the estate of the said John L. Waugh, deceased, as to which he died intestate, under the facts found by the court, and by force of the said amended sections 25 and 26, descended at the death of said decedent, the one-half thereof to his widow, Mary Waugh, and the remaining one-half thereof to his sisters and the descendants of his deceased brother and sister, the appellants in this action, subject, however, to the estate therein of his said wife, created by his will, for and during her natural life. These amended sections 25 and 26 of the statute regulating descents, etc., as we have already shown, were absolutely and unconditionally repealed by the above mentioned repealing act of March 9th, 1867, which said act was passed for the express purpose, as its provisions clearly indicate, of repealing unconditionally, and without reservation or saving clause of any kind except such as was expressed therein, all laws theretofore passed which were not in conformity with the ruling of this court in the case of *Langdon* v. *Applegate, supra.*

The amended sections 25 and 26 of the law of descents were not in conformity with the ruling of this court in

the case referred to, and were therefore repealed by the aforesaid act of March 9th, 1867. The validity of this repealing act, and its effect in reviving the old law, have been too often recognized by this court, as we have seen, to be called in question now. The rules governing the descent of property, and the apportionment of the estates of decedents, are wholly the creatures of statutory law. The General Assembly of this State has unlimited and uncontrolled power over this subject, and may make, modify, amend or repeal the law of descent and the rules for the apportionment of the estates of the dead. It is certain, we think, that the Legislature had the power to repeal the amended sections 25 and 26 of the law of descents, as amended by the aforesaid act of March 4th, 1853, and by such repeal to virtually reenact or actually revive the original sections 25 and 26 of the original act of May 14th, 1852. It is certain also, as it seems to us, that the General Assembly had the power to provide in said repealing act, that all actions arising out of any law repealed by said act should be commenced within ninety days from the 9th day of March, 1867, and not afterward. This action was commenced, as the record shows, on the 15th day of September, 1876, or more than nine years after the expiration of the ninety days within which, and not afterward, the act provided that it "shall be commenced." It was commenced too late, and, therefore, can not be maintained.

The case at bar is very similar in some of its features to the case of *Leard* v. *Leard, supra.* In that case, as in this, the brothers and sisters of a decedent who died intestate, leaving no father or mother, nor any child or the descendants of any child, but leaving a wife, surviving him, brought an action in which they claimed title, as against such widow, to an interest in certain lands, of which the decedent was seized in fee at the time of his death. The brothers and sisters of the decedent, who had died in

March, 1865, commenced their suit on the 15th day of January, 1868, or a little more than seven months after the expiration of the ninety days mentioned in section 2 of the aforesaid repealing act of March 9th, 1867, and founded their claim to a recovery on the said amended sections 25 and 26 of the descent law, as amended by said act of March 4th, 1867. The case was decided below against the brothers and sisters of the decedent, and they appealed to this court, where the judgment below was affirmed upon the ground, among others, that the suit was not brought within the time limited in said repealing act, and was, therefore, commenced too late. GREGORY, J., in delivering the opinion of the court, said : "The courts were open to the appellants from the death of the intestate to assert their claim. They had ninety days from the passage of the act of March 9th, 1867, in which to do so. It can not be said that the last-named act deprived them of having a reasonable time within which to commence their action. * * * * The suit was not commenced in time."

In the case now before us, it will be seen from the court's special finding of facts, that John L. Waugh died in August, 1860, and, therefore, it would seem that his heirs at law, the appellants in this action, had nearly seven years in which to assert and establish their title to the lands in controversy, before the expiration of the limitation contained in the repealing act of March 9th, 1867. It is true that, during the continuance of the life-estate of the decedent's widow, Mary Waugh, created by his last will, in said lands, the appellants could not have maintained an action either for the recovery of the possession of said lands or for the partition thereof. But it is equally true that, at any time after the death of said John L. Waugh, and before the expiration of said limitation, the appellants might have brought and maintained an action, in the proper court of this State, "for the purpose of determining and quieting

the question" of their title to the lands in suit. Such an action was expressly authorized in and by section 611 of the practice act, under which section, as we construe its provisions, it is not material whether the plaintiffs or the defendants are in or out of the possession of the real estate in controversy, at the commencement or during the pendency of the suit, as in either event, without regard to the possession, the action can be maintained.  2 R. S. 1876, p. 254 ;  *Caress* v. *Foster,* 62 Ind. 145 ; and *Schori* v. *Stephens,* 62 Ind. 441.  Besides, the record of this action shows that it was not commenced until after the expiration of more than ninety days, and nearly or quite one year, from the death of the life tenant, Mary Waugh.

It will be observed that the limitation expressed in the repealing act of March 9th, 1867, has no exceptions, even in favor of persons under disabilities of any kind.  As we have already said, the act was evidently passed in anticipation of the decision of this court in the case before referred to in 28 Ind. 382, overruling its previous construction of section 21 of article 4 of the constitution of this State of 1851.  A necessary consequence of this new construction of the constitutional provision in question was to give validity to a large amount of legislation which had before that time been regarded as unconstitutional and void ; and this, it was supposed, would result in many lawsuits. The object of the act of March 9th, 1867, was to repeal all such legislation, and at the same time to give speedy repose to all such anticipated lawsuits, by providing that they should be commenced within ninety days from the passage of the act, and not afterward.  We may well conclude, therefore, that the Legislature did not intend there should be any exceptions to this limitation in favor of any person, whether under disabilities or not.  *DeMoss* v. *Newton, supra.*

For the reasons given, we think that the court did not

err in its conclusion of law upon its special finding of facts; and it follows, of necessity, from this conclusion, that the appellants' motion for a judgment in their favor on the facts found, notwithstanding the conclusion of law, was, in our opinion, correctly overruled.

Other questions have been presented and elaborately argued by counsel, but their determination does not seem to us to be necessary to the proper decision of this case, and therefore we do not consider them.

The judgment is affirmed, at the appellants' costs.