Hauk *et al. v.* McComas *et al.*

## No. 11,716.

## HAUK ET AL. *v.* McCOMAS ET AL.

PARTITION.—A parol partition of land in this State is binding and obligatory upon the parties.

SAME.—*Possession.*—In order to render a parol partition of land binding, it is not necessary that the tenant shall actually enter into possession of the part awarded him, but if he retains it, such retention is taking possession within the meaning of the law.

WILL.— *Widow's Election.*—*Descents.*—*Heirs.*—Where a testator dies, leaving a widow and six children, three sons and three daughters, devising forty acres of land to each of the sons, and his remaining land, seventy-seven $\frac{62}{100}$ acres, to his widow for life, and to his daughters after her death, and such widow elects to take under the law, she thereby becomes entitled to one-third of such land in fee simple, and two-thirds of the seventy-seven $\frac{62}{100}$ acres, during the life of said widow, descends to the children of such testator.

SAME.—*Life-Estate.*—*Tenants in Common.*—The widow's election to take under the law was a rejection of a life-estate under the will, and consequently no disposition was made of such estate, and hence the same descended to the heirs of said testator.

SAME.—The election of the widow to take under the law entitled her to one-third in fee simple of such forty acres of land devised to her sons, and they became entitled to one-third of the seventy-seven $\frac{62}{100}$ acres of land during the life of such widow. She was therefore a tenant in common with each son in the forty acres of land devised to him, and they were tenants in common in the seventy-seven $\frac{62}{100}$ acre tract of land with their mother and their sisters.

SAME.—*Parol Agreement of Partition.*—While they thus held the land, a parol agreement between the mother and sons, whereby the latter were each entitled to retain the forty acres devised to him, and the mother was entitled to retain their interest in the seventy-seven $\frac{62}{100}$ acre tract, followed by possession by each son, who made valuable and lasting improvements upon the forty acres of land devised to him, operated as a valid and binding parol partition of such land.

SAME.—*Parties.*—As the daughters had no interest in the forty acres devised to each of the sons, the fact that they did not join in the partition did not affect its validity, as their interest in the seventy-seven $\frac{62}{100}$ acres of land was not thereby affected.

SAME.—*Improvements.*—*Estoppel.*—As one of said sons retained possession of the forty acres devised to him, and made valuable and lasting improvements thereon, at the instance of his mother, in pursuance of such parol partition, the mother was thereafter estopped to dispute the

validity of such partition, and as the daughters were the vendees of the mother they were likewise estopped.

From the Montgomery Circuit Court.

*G. W. Paul, J. E. Humphries, M. Thompson, W. B. Herod* and *W. H. Thompson,* for appellants.

*T. E. Ballard* and *M. E. Clodfelter,* for appellees.

BEST, C.—The appellees, Margaret A. Switzer and Mary C. McComas, brought this action against the appellants to obtain partition of the lands in the complaint described. Issues were formed, a trial had, and judgment rendered for the appellants. The appellees appealed, and the judgment was reversed for errors committed in overruling demurrers to the second and fifth paragraphs of the answer, and in overruling a demurrer to the cross complaint of the appellants. See *Switzer* v. *Hauk,* 89 Ind. 73. After the cause was remanded these pleadings were amended, issues formed, a trial had, the facts specially found, conclusions of law stated and judgment rendered for the appellees. A motion by each appellant to modify the judgment was overruled, and these rulings and the conclusion of law stated are assigned as error.

The facts found are these:

1st. That on the 6th day of April, 1879, one Philip Hauk died testate, seized in fee of the south half of the southwest quarter of section 33, in township 20 north, of range 5 west, containing eighty acres, and the northwest fractional quarter of section 4, in township 19 north, of range 5 west, containing one hundred and nineteen $\frac{62}{100}$ acres, all in Montgomery county, Indiana; that he left surviving him his wife, Sarah Hauk, and six children, viz., the plaintiffs Margaret A. Switzer and Mary C. McComas and the defendants Daniel Hauk, Absalom Hauk, Marion Hauk and Amanda Gray.

2d. That said Philip Hauk, on the 23d day of November, 1878, executed his will, which was duly admitted to probate in Montgomery county, Indiana, on the 25th day of April, 1879; that by said will said decedent devised to Daniel

Hauk the west half, and to Absalom Hauk the east half, of said eighty acres; to Marion Hauk forty acres off the west end of said fractional quarter; to his widow the balance of said fractional quarter for life, and after her death the same was to be equally divided between his daughters.

3d. That a short time. after the probate of said will the widow rejected the provision made for her and elected to take under the law.

4th. That at the time said widow elected to take under the law, she and her three sons, Daniel, Absalom and Marion, had a parol agreement that said will was to stand in all its provisions, except so far as it affected her rights; that her said sons were to receive the same lands devised to them and were to pay the sums of money named in the will to the executor; that said widow was to release her interest in all of the lands devised to her sons, and was to retain her interest in the seventy-seven $\frac{62}{100}$ acres devised to her during life; that she refused to make her election until she and her sons had been advised by counsel that such an arrangement would be valid.

5th. That afterwards, and in pursuance of such agreement, said widow and her said sons " proceeded to run the lines between said lands and to divide the same, and the lines were run and the division made, and the said seventy-seven acres set off to her, and the said forty-acre tracts set off to each of her sons, according to the provisions of said will and in pursuance of said parol agreement."

6th. That said Daniel Hauk, in pursuance of said agreement, and relying upon the same, took possession of the land devised to him, but made no improvements upon the same, other than to remove some fences which were of the value of $10.

7th. That said Absalom Hauk, in pursuance of said agreement, and relying upon the same, took possession of the land devised to him, and made improvements thereon to the amount of $50 by building new and removing old fences.

8th. That at the time said agreement was made said Marion Hauk was in possession of the land devised to him and had been for the last ten years; that in pursuance of said agreement, and relying upon the same, he made valuable and lasting improvements upon said land, " such as building a barn, setting out an orchard, digging a well, clearing up the land and preparing the same for cultivation;" that said improvements were of the value of seven hundred dollars, and were made with the knowledge and consent of said Sarah Hauk, and that she encouraged said Marion to make a part of them.

9th. That about ten years prior to the death of Philip Hauk he agreed with Marion Hauk, that if the latter would take possession of the land devised to him, would occupy and improve it and would assist said Philip in running his farm during his life, he would devise said forty acres to Marion; that in pursuance of said agreement said Marion took possession of said land, occupied it and made valuable and lasting improvements upon it by clearing the land, building a dwelling-house, out-houses and fences of the value of about $1,200; that said Marion fully complied with his contract with said Philip, of which said Sarah had full knowledge, etc.

10th. That said Daniel, Absalom and Marion, relying upon said parol agreement, paid to the executor of said estate the sums of money mentioned in said will.

11th. That the improvements upon said farm were upon the seventy-seven acre tract, and that said Sarah occupied said tract until her death; that said Daniel, Absalom and Marion each had the exclusive possession of the land set off to them until this action was brought.

12th. That after said Daniel and Absalom had taken possession of the lands devised to them, and had made the improvements above mentioned upon them, and after said Marion had made his improvements, and while each was in the exclusive possession of the land devised to him, said Sarah, on the 19th day of July, 1880, conveyed by warranty deed all her interest in all of said lands to the three daughters above named.

13th. That Amanda Gray disclaims any interest in the lands sought to be divided.

14th. That after said division was made, and before the conveyance of said Sarah, said lands were duly transferred for taxation.

The court, upon the foregoing facts, concluded that the appellees were entitled to a partition of each forty acres, and awarded judgment accordingly.

These facts show a parol partition of these lands, and such partition in this State is binding and obligatory upon the parties. *Moore* v. *Kerr*, 46 Ind. 468 ; *Bumgardner* v. *Edwards*, 85 Ind. 117.

When this cause was here before, it did not appear by the pleadings that Daniel, Absalom and Marion Hauk were the children of Philip Hauk, and, consequently, it did not appear that they, after Sarah Hauk had elected to take under the law, had any interest in the seventy-seven and $\frac{62}{100}$. acres of land devised to her during life. For this reason it was held that the alleged parol partition was no partition at all, but simply an agreement upon the part of Sarah Hauk to refrain from claiming her interest in the lands devised to these persons. Now the fact appears that Daniel, Absalom and Marion Hauk are the children of Philip Hauk, and, consequently, it appears that they had an interest in the seventy-seven and $\frac{62}{100}$ acres of land devised to Sarah Hauk at the time partition was made. This the appellees dispute. They claim that the widow, after her election to take under the law, owned an undivided one-third and the daughters the residue of the seventy-seven and $\frac{62}{100}$ acres. In this they are mistaken. When the widow elected to take under the law, she became entitled to an undivided one-third of each forty-acre tract, and an undivided third of the seventy-seven and $\frac{62}{100}$ acre tract. The girls, however, did not become the owners of the residue of the last named tract. The widow's election to take under the law did not facilitate the estate devised to them, nor enable them to

take it before her death. This has been frequently decided. *Rusing* v. *Rusing*, 25 Ind. 63; *Cool* v. *Cool*, 54 Ind. 225.

The widow's election to take under the law was a rejection of a life-estate under the will, and, consequently, no disposition was made of such estate. *Dale* v. *Bartley*, 58 Ind. 101; *Wilson* v. *Moore*, 86 Ind. 244.

As no disposition was made of the seventy-seven and $\frac{62}{100}$ acres during the life of the widow, the same descended by law to the heirs of Philip Hauk. *Waugh* v. *Riley*, 68 Ind. 482; *Wilson* v. *Moore*, supra.

The widow, by her election, took one-third in fee, and the remaining two-thirds, for the life of the widow, descended to the children. Daniel, Absalom and Marion, therefore, became entitled to one-third of such life-estate, and this they owned at the time of such partition. They were, therefore, tenants in common in the seventy-seven and $\frac{62}{100}$ acres with all the parties, and each was a tenant in common with the widow in the forty-acre tract devised to them. The fact, however, that the girls were not tenants in common in the lands devised to the boys, does not impair the validity of the parol partition made with the mother. If otherwise valid, this fact can not affect it.

The facts found, so far as Daniel and Absalom are concerned, bring this case within the rule as announced in the case of *Moore* v. *Kerr*, 46 Ind 468. The parties owned common property; partition was made and possession taken and held in pursuance of such partition. This was sufficient to render such partition valid and binding.

The facts are different with Marion. He did not take, but kept possession of the parcel allotted him in pursuance of such partition. Does this make any difference? We think not. Retaining possession and making the improvements are sufficient to render the partition valid as to him. Strictly speaking, a tenant in common, upon partition, does not take, but retains, possession of the parcel allotted him. In con-

templation of law, all are in possession, and when a division is made each retains the portion allotted him. Such possession becomes exclusive, and in that sense he takes possession, but not in the sense of actually taking possession of land to which before that time he had no claim. Nor does the law require such possession to be taken. If it did, partition of land actually occupied by the tenants could not be made by parol. All that is required is a several occupancy in accordance with the division made. This, when followed by such improvements as were made, will, according to all the authorities, render the partition binding. *Tomlin* v. *Hilyard,* 43 Ill. 402; *Manly* v. *Pettee,* 38 Ill. 128; *Piatt* v. *Hubbel,* 5 Ohio, 243; Freeman Cotenancy, section 402.

In addition to this, upon the faith of such partition, the improvements were made with the knowledge and consent of the widow, who encouraged her son to make a portion of them. Under such circumstances, upon the plainest principles of equity and good conscience, she was thereafter estopped to dispute the validity of such parol partition, and the appellees who claim through her are likewise estopped.

The fact that the appellees owned a present interest in the seventy-seven and $\frac{62}{100}$ acres of land, and did not join in the parol partition, does not affect its validity. They owned none in either forty-acre tract, and hence were not interested in the division of either. Such interest as the mother retained and acquired in the seventy-seven and $\frac{62}{100}$ acres by the partition, she held with them as tenants in common. The arrangement in no manner affected them, and, therefore, they, as owners of an undivided interest, can not question the validity of such partition. As the vendees of the mother, they can not question such partition, because she, herself, was bound by it. In any view the partition is binding, and the court, therefore, erred in its conclusions of law.

The appellees insist by a cross assignment of errors that the court erred in overruling the demurrers to the second and fifth paragraphs of the answer. If so the appellees were not

injured by the rulings, as the court found against the appellants upon such paragraphs. The cross complaint was clearly good, and as this will support a judgment in favor of the appellants, the ruling upon the demurrer becomes wholly immaterial. In such case the court will not reverse the judgment to correct the error, but will order the proper judgment rendered. The judgment should, therefore, be reversed.

PER CURIAM.—It is therefore ordered that the judgment be reversed, with instruction to state conclusions of law in accordance with the foregoing opinion, and to render judgment thereon in favor of appellants, at appellees' costs.

Filed Sept. 20, 1884. Petition for a rehearing overruled Dec. 13, 1884.