## WEATHERHOGG v. BOARD OF COMMISSIONERS OF JASPER COUNTY.

[No. 19,600. Filed January 15, 1902.]

CONTRACTS.—*Architect.*—*Construction of Court-House.*—*Commission.*—A contract by a county with an architect for the preparation of plans and specifications for a court-house, and superintending the construction thereof, provided that the plans should be for a building that should not exceed $100,000 in cost, and should the bids on the plans exceed said limit, or the county require changes or modifications of the plans, or new plans drawn, the architect

should furnish the same without additional expense. The contract provided that the architect should receive for his services a sum equal to five per cent. of the actual cost of the completed building. The building as completed cost $149,603. *Held*, that the architect is entitled to his commission on the total cost of the building. *pp. 15–21.*

COUNTIES.—*Percentage Contract.*—The provision of §7853 Burns 1901 against the making of percentage contracts relates to such employments as affect the duties of public officers, and does not apply to persons employed by boards of commissioners to perform a service for the county not connected with official duties. *pp. 21, 22.*

SAME.—*Contract with Architect.*—*Assignment of Contract.*—The enforcement of a contract between an architect and board of county commissioners for the construction of a court-house cannot be defeated by the latter on the ground that the contract was assigned by the original contractor to plaintiff, where the commissioners consented to the assignment, and directed warrants to be drawn in partial payment to the assignee. *p. 22.*

SAME.—*Actions Against.*—*Constitutional Law.*—The act of 1885 (Acts 1885, p. 80) amending the act of 1879 so as to give an aggrieved party the option to appeal a disallowed claim, or to bring an original action therefor against the county in the circuit court is not void as being in violation of §§19, 21, of article 4 of the Constitution. *pp. 22–25.*

From White Circuit Court; *T. F. Palmer*, Judge.

Action by Charles R. Weatherhogg against the board of commissioners of Jasper county for balance due on contract for services as architect of court-house. From a judgment for defendant, plaintiff appeals. *Reversed.*

*R. S. Robertson* and *W. S. O'Rourke,* for appellant.
*F. Foltz, C. G. Spitler* and *H. R. Kurrie,* for appellee.

HADLEY, J.—The commissioners of Jasper county employed Alfred Grindle, an architect, to prepare plans and specifications and to superintend the building of a court-house. This suit involves the amount of compensation to which the architect became entitled under his contract of employment. The contract was in writing, and so much of it as relates to the question in controversy is as follows: "The plans and specifications of said building shall be for a building that shall not exceed in cost for a fully completed, fire-proof court-house, the sum of $100,000. This to include

all permanent fixtures and appliances. Should the bids on contract or contracts for said building exceed the aforesaid limit of cost, or should said first party, for any reason, at any time call for and require changes and modifications of said plans and specifications, or for entirely new plans, specifications, and detailed drawings, said second party shall furnish the same without additional expense. Said second party shall superintend the erection and construction of said building, and all parts thereof, making thorough inspection of all labor and materials, and promptly reject all labor, materials, appliances, and fixtures of every kind and nature that fall below the grade required by the specifications. He shall also be present at the letting of all contracts to advise with said first party, and at such other times as first party shall request. Said second party also specially agrees that he will be responsible for, and pay to first party, all damage and expenses and loss and extras and damages of every kind and nature that may be incurred on account of any neglect, mistake, omission, or incompetency upon his part, either in drawing and preparing the plans, specifications, and contracts, or inspecting and superintending the materials, appliances, and construction of said building; and accepting said plans and specifications, materials, appliances, building, or any portion thereof by said first party, their agent or superintendent, shall in no wise release said second party from his liability herein, if any defects, mistakes, extras, or changes, or omissions of any kind, aforesaid, are hereafter discovered or required, and also pay first party any excess said fully completed building may cost over and above the estimate made by second party, unless said excess cost is caused by changes and extras ordered by first party. * * * For the performance and execution of the duties and obligations herein assumed, said second party shall be paid as follows: First, for preparing and furnishing said detailed drawings, plans, and specifications and contracts, three per cent. of the actual cost of said completed building;

two per cent. of the estimated cost to be paid when said detailed drawings, plans, and specifications are accepted by said first party; one per cent., when the contracts for erection and construction for said building are executed. Second. The payment to second party for superintending the erection and construction of said building shall be two per cent. of the cost of said completed building, payable *pro rata* as contractor's estimates are paid. The aforesaid commissions shall be based on the total cost of the fully completed building, and the permanent appliances and fixtures thereto attached, but shall not include any commission upon any of the movable furniture or fixtures, such as tables, seating chairs, metallic or other kinds of paper files and book and record cases, grading grounds, putting in walks, or sewers outside of building."

There are three paragraphs of complaint. The first two are founded on the written contract, and are substantially the same. The third is upon the *quantum meruit*. The assignments of error call in question the action of the court in sustaining a demurrer to each paragraph of the complaint. The ruling upon the third paragraph is waived by failure of appellant to discuss it. In substance, it is alleged in the other two paragraphs that appellee in December, 1896, entered into a written contract, a copy of which is filed, with Alfred Grindle, whereby the latter undertook to prepare for appellee, full, detailed, and finished plans and specifications for the construction of a court-house, and to superintend the construction thereof, and to attend the letting of all contracts, and to make estimates of the work as the work progressed; for which services the said Grindle was to receive, by the terms of said contract, for the preparation of said plans and specifications, a sum equal to three per cent. of the actual cost of said completed building, and for superintending the erection of said building an additional sum equal to two per cent. of the actual cost of said completed building, including all permanent appliances and fixtures.

Under his employment, Grindle was to prepare plans and specifications for a fire-proof building that would cost not exceeding $100,000 including all permanent appliances and fixtures. Grindle did prepare plans and specifications for such a building that would cost not to exceed $100,000, which plans and specifications were approved and accepted by the appellee; but, after said approval and acceptance, appellee made and ordered changes and additions to said plans and specifications, which required for the construction of the building so ordered and designed $149,603, and all the cost of said building in excess of $100,000 was caused by the changes, additions, and extras ordered by appellee. After the making of said contract, and after its partial execution, Grindle, with the knowledge and consent of appellee, entered into a contract of copartnership with Weatherhogg, appellant, to conduct the business of architects, including the completion of Grindle's said contract with appellee, and afterward, with the further and full knowledge and consent of appellee, and before the completion of said court-house, the partnership of Grindle and Weatherhogg was by mutual consent dissolved, by the terms of which dissolution all the rights, claims, and obligations of Grindle, under the said contract with appellee, were, with the knowledge and consent of appellee, assigned to appellant. The cost of the completed court-house was $149,603. The contract with Grindle transferred to appellant has been fully and satisfactorily performed. Appellee has paid appellant and his assignor on the contract $5,112. There remains due and unpaid $1,312, for which judgment is demanded. Grindle is made a party defendant to answer to his interest, and files a disclaimer. A claim for the balance due had been previously filed with the auditor of Jasper county, and has been disallowed by appellee.

1. The chief contention involves the construction of the contract sued on. Appellant insists that under the contract he is entitled to a compensation equal to five per cent. of the

actual cost of the completed court-house, including perma-
nent appliances and fixtures, while, on the other hand, ap-
pellee asserts that, under the proper construction of the con-
tract, appellant's compensation is limited to five per cent.
of the cost of the building, not to exceed $100,000, and, as it
is admitted in the complaint that $5,000 has been paid, it is
thereby affirmatively shown that appellant has no cause of
action.

The contract is inaptly drawn, and upon first blush it
seems that the first and last paragraphs quoted are incon-
sistent.    This apparent inconsistency, however, disappears
upon closer examination.    The first clause of the first para-
graph is manifestly the mere statement of the basis from
which the architect shall work in the preparation of the
initial plans and specifications; and, when construed with
the balance of the paragraph, it becomes plain that the pur-
pose of the language was not to set up a limit to the archi-
tect's compensation for the completed work, but to impose
upon him the obligation of drawing, without extra charge,
all such modifying, amendatory, and supplemental plans
and specifications as the commissioners might require in
reaching a satisfactory and final conclusion as to the kind
of house they would build; that is to say, when the bids were
received upon the plans that the architect should prepare
on the basis of a $100,000 building, if the bids exceeded the
limit of cost, and the commissioners should desire to change
the plans so as to reduce the cost, "or should the commis-
sioners, for any reason, at any time call for and require a
change in said plans and specifications, or for entirely new
plans, the architect shall furnish the same without additional
expense."    It is clear that the thing aimed at in this part of
the contract was to cut off the right of the architect to make
charges for extra work that he might be required to do in
settling the plans and specifications.    The language em-
ployed defines what he shall not have, not what he shall have.
Next follows a specification of the duties of the architect as

superintendent of construction, and his liability in damages for mistakes, omissions, and incompetency, and then comes the first and final mention of what his compensation *shall be,* in these words: "For the performance and execution of the duties and obligations herein assumed, said second party (the architect) shall be paid as follows: First. For preparing and furnishing said detailed drawings, plans and specifications and contracts, three per cent. of the actual cost of the completed building. * * * Second. The payment to second party for superintending the erection and construction of said building shall be two per cent. of the cost of said completed building, payable *pro rata* as contractor's estimates are paid. The aforesaid commissions shall be based on the total cost of the fully completed building and the permanent appliances and fixtures thereto attached, but shall not include any commission on any of the movable furniture or fixtures, such as tables, seating chairs, metallic or other kinds of paper files and book record cases, grading grounds, putting in walks or sewers outside of building."

Here the basis for the computation of the architect's compensation is three times specifically stated, with definite words of exclusion of certain things, but without any limitation as to the cost of the completed building. The language is so free from uncertainty as to forbid construction, and to make it perfectly clear that we cannot allow appellee's contention without reading into the contract words that it did not place there, and this we cannot do. There is nothing in the complaint or contract to indicate that the commissioners intended to or did in any way limit the cost of the building to $100,000. As in most instances of the kind, it is obvious that they thought at the time that they would be able to construct a modern, up to date, ample court-house for that sum; and so they provided in their contract that the first and basic plans should be so drawn, reserving, however, by implication, the right, when the plans were developed, if it should

appear that they could not construct such a building as the interest of the county demanded, to require of the architect such other and further experimental plans as would enable them to reach a satisfactory conclusion. And when all the provisions of the contract are read together, the meaning is not doubtful,—that the architect is entitled for his services in preparing the approved plans and specifications to a sum equal to three per cent. of the total cost of the completed building, including permanent appliances and fixtures, and nothing for his work on experimental or rejected plans; and to a further sum equal to two per cent. of the total cost of the completed building, including permanent appliances and fixtures, for superintending the construction.

2.   It is contended on behalf of the commissioners that appellant cannot enforce his contract for a percentage, because, under §7853 Burns 1901, §5766 R. S. 1881 and Horner 1901, the board has no power to make it. The section referred to is embraced within and is a part of the fee and salary act of 1879 (Acts 1879, p. 130), relating to the compensation of State and county officers; and the inhibition therein contained against the making of commission and percentage contracts relates to such employments as affects the duties of public officers, and cannot be held to apply to persons employed by boards of commissioners to perform a service for the county wholly disconnected with official duties. To view the section otherwise is to condemn it as not being germane to the subject expressed in the title of the act. As a condition precedent to the letting of any contract for the construction of a court-house, boards of commissioners are required to procure and adopt specific plans and specifications for the proposed building. §§5589, 5594q1 Burns 1901, §4243 Horner 1901. As a matter of common knowledge we know that these are prepared only by architects, skilled in the art of drawing and building, and as said in *Kitchel* v. *Board, etc.,* 123 Ind. 540, at page 543, "We take notice of the fact, too, that the archi-

•tect whose plans and specifications are adopted customarily receives a commission on the cost of the work as compensation for preparing the plans and for superintending the construction of the work." In the legislation last referred to,— some before and some after 1879,—no limitation is laid upon commissioners in the method of contracting with architects. The duty to procure plans implies the power to contract and pay for them, and we must assume that the lawmakers acted with knowledge of the custom in vogue at the time, and left to the discretion of commissioners the character of contract they would make in such cases.

3. There is nothing in the point that the complaint shows upon its face that the contract is one of personal trust and confidence, and is therefore unassignable by the architect, for want of power in the commissioners to give consent. The commissioners gave the contract to Grindle because they believed him competent and able to execute it. For the same reason they could, without injury to the county's interest, and without impinging upon public policy, consent to its transfer to another equally competent and able. Having consented to the transfer, and recognized and ratified it by accepting the work of and directing warrants drawn in partial payment to the transferee, it is surely too late to make objection.

4. A further objection is that the complaint shows this to be an original action in the circuit court for the enforcement of a claim against the county, which is expressly prohibited by a statute approved March 29, 1879 (Acts 1879, p. 106). In support of this claim it is contended that the act approved March 9, 1885 (Acts 1885, p. 80), purporting to amend the act of 1879 so as to give an aggrieved party the option to appeal a disallowed claim, or to bring an original action therefor against the county in the circuit court, is void, as being in violation of §§19 and 21 of article 4 of the State Constitution, which respectively provide that "every act shall embrace but one subject and matters properly con-

nected therewith; which subject shall be expressed in the title," and "no act shall ever be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length." The title of the act of 1879 is as follows: "An act regulating the presentation of claims against counties in the State of Indiana, before the board of county commissioners, and the adjudication of the same." The body of the act is composed of four sections, the third of which reads: "Any person or corporation, feeling aggrieved with any decision of the board of county commissioners, made as hereinbefore provided, may appeal to the circuit court of such county, as now provided by law." The title and body of the amendatory act of 1885 reads thus: "An act to amend an act entitled 'An act regulating the presentation of claims against counties in the State of Indiana, before the board of county commissioners and the adjudication of the same,' approved March 29, 1879.

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That section 3 of an act entitled 'An act regulating the presentation of claims against counties in the State of Indiana, before the board of county commissioners and the adjudication of the same,' approved March 29, 1879, be amended to read as follows: Section 3. Any person or corporation feeling aggrieved with any decision of the board of county commissioners made as hereinbefore provided, may appeal to the circuit or superior court of such county, as provided by law. No appeal shall be from the decision of said board making allowance for services voluntarily rendered or things voluntarily furnished for the public use. From all other decisions for allowances an appeal may be taken within thirty days to the circuit or superior court of the county, the party giving sufficient bond against cost payable to said board. If a claim be disallowed in whole or in part, except where the claim is for services voluntarily rendered or things voluntarily furnished, the claimant may appeal, or, at his option, bring an action against the county;

but if he shall not recover more on such appeal than is allowed, he shall pay the costs of such appeal. Section 2. All laws and parts of laws in conflict therewith are hereby repealed."

It is argued first that the amendatory act is invalid, under the above provisions of the Constitution, for failure to set out in full the old section to be amended; and *Langdon* v. *Applegate,* 5 Ind. 327, and cases following it, are cited to sustain the proposition. The decision in the Langdon case was overruled in *Turnpike Co.* v. *State,* 28 Ind. 382, thirty-four years ago, since which time it has been uniformly held by this court that the constitutional provisions are satisfied by setting forth at full length, in the amendatory act, the act or section as amended. *Draper* v. *Falley,* 33 Ind. 465; *Blakemore* v. *Dolan,* 50 Ind. 194, 202; *Bush* v. *City of Indianapolis,* 120 Ind. 476.

Second, it is asserted that the amendatory act is void because the number of the particular section of the old act to be amended is omitted from the title. The evident object of these provisions of the Constitution of 1851 was to avoid the mistakes, uncertainties, and confusion in amendatory acts that had resulted from the legislative methods sanctioned by the Constitution of 1816; that is, in some instances, by making no mention, either in the title or body of the amendatory act, of the particular section or provision of the former act intended to be amended, and in other cases by providing in the amendatory act that certain words and phrases of the former act be stricken out, and other words and phrases substituted. *Bush* v. *City of Indianapolis, supra.* And it may be said that the purpose of these provisions is fully attained when the amendatory act, of itself and as an entirety, contains such matter as clearly and unmistakably identifies the act or the section of the act to be amended, and the act or section of the act as the same is amended. Beyond all cavil, the act to be amended in this case is sufficiently certain, for its title and date of approval are set out *in totidem verbis.* in

both the title and body of the amendatory act. The title of an act, while essential to its constitutional validity, is nothing more than the exponent of the subject of the enactment. Its purpose is to give notice to the lawmakers, and to guide the courts in determining the subject legislated upon. In this case the title gives unmistakable notice that the intention was to amend the act of 1879. The body of the proposition clearly states the particular part of the old law intended to be amended, and sets forth at length the new proposition as it will stand when amended. This is a substantial compliance with the Constitution. The complaint is sufficient.

Judgment reversed, with instructions to overrule the demurrer to each the first and second paragraphs of the complaint.